MATTHEW H. SCHEEL, trustee, complainant-appellee,

*v.*

MINNIE JACOBSON, defendant-appellee; CHARLOTTE F. RASH-KIND and SYLVIA E. JACOBSON, defendants-appellants.

[Submitted October term, 1932. Decided January 31st, 1933.]

*Mr. Edward Thomas Moore* (*Mr. Merritt Lane*), for the defendants-appellants.

*Messrs. Sullivan & Sullivan* (*Mr. Gustav A. Hunziker*), for the complainant-respondent.

The opinion of the court was delivered by

BODINE, J. An action was brought by the complainant to foreclose a mortgage held for the Passaic Trust and Safe Deposit Company as security for certain notes discounted by it. The appellants, Charlotte F. Rashkind and Sylvia E. Jacobson, claimed to own an undivided interest in the premises, free from the lien of the mortgage, and filed a counter-claim. We find ourselves in accord with the views expressed by the vice-chancellor, except so far forth as he disallowed the claims of the appellants, on the theory that they had acquiesced, after their majority, in the sale of the premises in

question by their mother individually, so as to be in laches. It appears that Mrs. Rashkind reached the age of twenty-one ten years ago and Mrs. Jacobson five years ago. They knew their mother was collecting the rents of the property and treating it in all other respects as her own. Beyond this there was no evidence bearing upon the point.

The premises in question had been the property of William Jacobson, who died intestate in 1916, leaving a widow and three minor children. The wife instituted proceedings in chancery to sell infants' lands. The title to the property was taken by one Lieberfreund, and she then acquired it.

We are in accord with the following portion of the vice-chancellor's opinion: "The proceeding in this court for the sale of infant's land, the sale to Lieberfreund and the subsequent conveyance to Scher and Mrs. Jacobson, were merely a device to transfer title in the property on which complainant holds a mortgage from the children to Mrs. Jacobson, and to obtain for her the proceeds of the sale of the other tracts. This, of course, was a fraud on the children and would have been a fraud even if Mrs. Jacobson had paid a valuable consideration for the property, instead of no consideration at all. Throughout the transaction and at its conclusion, the children continued to own an equitable interest in the property, and Lieberfreund, Scher and Mrs. Jacobson were successively the holders of the legal title subject to that interest. Complainant's mortgage, however, is superior to the equity of the children unless the bank had knowledge, actual or constructive, of that equity or notice of such facts as should have put the bank to inquiry. I think there were such facts. The title of the mortgagor Scher rested upon the proceeding in this court for the sale of infant's lands. The bank had notice of whatever the record in this court on that proceeding disclosed, including the fact that Scher was Mrs. Jacobson's solicitor. The law in this state relating to the relation of attorney and client is well settled. The relationship is highly confidential; if the attorney uses information acquired by him through his professional relation with his

client in order to purchase property, the subject of the professional relationship, he is presumed to act for his client's benefit (*Brown* v. *Bulkley, 14 N. J. Eq. 451; Crocheron* v. *Savage, 75 N. J. Eq. 589*) ; his purchase of his client's property is subject to close scrutiny and such a purchase is usually voidable at the instance of the client. *Condit* v. *Blackwell, 22 N. J. Eq. 481; Cleine* v. *Englebrecht, 41 N. J. Eq. 498; Dunn* v. *Dunn, 42 N. J. Eq. 431.* In the case at bar, the bank was chargeable with knowledge that Scher purchased the property the day after his client, Mrs. Jacobson, had conveyed it to his grantor, Lieberfreund. This should have aroused suspicions and have led the bank's officers to inquire whether Scher was acting for Mrs. Jacobson and with her committing a fraud upon the children. The fact that the deed from Lieberfreund to Scher was witnessed by Scher and the acknowledgment taken before him, was also a circumstance so unusual as to suggest inquiry. Such an acknowledgment is void. It might well indicate that the parties to the deed were unwilling to let any attorney, other than the grantee himself, become aware of the transaction. Scher's paper title was subject to Mrs. Jacobson's dower. Lastly, when the bank took its mortgage nearly a year and one-half after the deed from Mrs. Jacobson as guardian to Lieberfreund, Mrs. Jacobson and her children were still in open and notorious possession of the premises and were collecting the rents from the tenants. The general rule is that possession is notice of the possessor's title, but this rule does not apply in favor of a vendor remaining in possession as against a purchaser from his grantee. *Van-Keuren* v. *Central Railroad Co., 38 N. J. Law 165; Bingham* v. *Kirkland, 34 N. J. Eq. 229; Rankin* v. *Coar, 46 N. J. Eq. 566.* In the first of these cases, the exception is based on the ground of estoppel. The vendor's deed is conclusive against him, but the infant wards of Mrs. Jacobson are not estopped. I find that the cumulative effect of all the circumstances surrounding the taking of the mortgage were sufficient to put the bank to inquiry and that its mortgage was subject to the equity of the children. The conveyance by Mrs. Jacobson

as guardian through the two intermediaries to herself individually, was not absolutely void but was voidable at the option of her wards. They were entitled as of right to have the sale set aside or at their election upon arriving at majority, to acquiesce in the sale. *Deegan* v. *Capner, 44 N. J. Eq. 339."*

We think, however, he was wrong in his conclusion as to the bar of the appellants' rights by acquiescence. The case is barren of any evidence that these young women knew anything about the title to the property, or had any reason to suspect the fraud which had been perpetrated upon them by their mother while they were infants; save in this, that they do not seem to have inquired or examined the records to determine in what manner they had been provided for by their father. It is apparent that they had no knowledge whatever of their rights and accepted their living and their lack of property, as a matter of course, as most children do.

Chief-Justice Green said in *Quick's Executors* v. *Fisher, 9 N. J. Eq. 802, 806:* "It cannot be objected that these complainants have slumbered over their rights, or that they designedly forebore to prosecute their claim until after the death of the trustee. They were both infants at the death of the trustee, and consequently were not chargeable with laches. Nor can it be objected that they have in anywise assented to the illegal disposition of the trust fund, or ratified, directly or indirectly, the act of the trustee."

Chancellor Zabriskie said, in *Smith* v. *Drake, 23 N. J. Eq. 302* (at *p. 306*) : "The case as to the laches must be considered upon the other facts before the court. The suit, though eighteen years and a half after the deed, was commenced seventeen years after the oldest son was of age. The records of the deeds is no presumptive notice of the fact of fraud, even to those of full age, and the defendant, Nathan Drake, was the guardian of the two older children, which fact was calculated to give them confidence in the fairness of his transactions, and to put the best construction on those that would admit of different views. The younger children, who

must act with them, did not all come of age until five years before the suit, and the estate not being large, nor the value over the price bid great, it was prudent to wait until all could proceed in one suit. Under these circumstances, the delay or laches in this case are not so great as to bar the remedy."

And Vice-Chancellor Green said in *Hall* v. *Otterson, 52 N. J. Eq. 522* (at *p. 535*): "In the adjustment of these scales of justice, it is a controlling consideration whether the delay has been without valid excuse—not an excuse in law, but one which would have led a person reasonably to act as the party charged with laches has. A person cannot be deprived of his remedy in equity on the ground of laches, unless it appears that he had knowledge of his rights. As one cannot acquiesce in the performance of an act of which he is ignorant, so one cannot be said to neglect the prosecution of a remedy when he has no knowledge that his rights have been invaded; excepting always that his want of knowledge is not the result of his own culpable negligence."

It would seem to us apparent that the appellants had no knowledge, until the foreclosure action was instituted, that their rights had been invaded. Thereafter they acted promptly.

The decree appealed from is therefore reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Heher, Kays, Hetfield, Wells, Kerney, JJ. 13.