PAUL A. GIEHRACH et al., complainants-respondents,

*v.*

WILLIAM RUPP, individually and as executor of the estate of GEORGE RUPP et ux., et al., defendants-appellants.

[Submitted October term, 1932. Decided January 31st, 1933.]

*Mr. Edward Stover,* for the complainants-respondents.

*Messrs. Henn & Burr,* for the defendants.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a final decree of the court of chancery, declaring null and void certain conveyances upon which the title of the defendant William Rupp rests, and directing a reconveyance of the lands and premises in dispute from William Rupp to the complainants, together with a reference for an accounting.

The complainants are the children of Karl Gustav Giehrach, deceased, and claim under him as devisees.

The defendant William Rupp is a grantee and devisee of George Rupp, deceased, administrator *cum testamento annexo* of the estate of Karl Gustav Giehrach, who died June 26th, 1900, leaving a will dated June 16th, 1900, devising his property, real and personal, to his wife, Stella, in trust to receive the income thereof and at her discretion to sell, mortgage, convey or lease the same at either public or private vendue and invest and apply the proceeds equally to the support of herself and their four children, until the youngest attained the age of twenty-one years, and then to divide the remaining property equally between herself and said children.

His wife, Stella, was made the sole, executrix of said will. She later married George Rupp and on March 2d, 1902, she died, without having exercised the power of sale under the will.

On September 8th, 1908, George Rupp was appointed guardian of the children of Karl Gustav Giehrach, and on June 15th, 1916, he was appointed substituted administrator *cum testamento annexo* of his estate.

At this time, Mary, the oldest daughter of Karl Gustav Giehrach, had attained her majority. On June 20th, 1916,

George Rupp applied to the orphans court of the county of Hudson for an order to sell the lands of Karl Gustav Giehrach, to pay the debts of the estate, and in the petition filed, George Rupp, as administrator, stated that the lands consisted of two lots, each fronting on Lewis avenue, Jersey City, upon one of which there was erected a one-story six-room frame house, in which the petitioner then resided with one of the children of Stella Giehrach, and that upon the other there had been erected at his own expense a one-story frame factory building;

That the house was in great need of repair; there were back taxes and water rents due, and that the administrator was threatened with a tax sale unless the same were immediately paid, and that there was no income from the properties; that he had been offered by Frederick Deitz, the sum of $1,700 cash for the two properties, which he had been advised was a full and fair price for them, and that he had accepted said offer subject to the approval of the orphans court.

The court made an order approving the sale and on July 22d, 1916, the said George Rupp, as administrator *cum testamento annexo,* conveyed the two lots in question to the said Frederick Deitz, and on December 1st, 1916, the said Frederick Deitz reconveyed the same to George Rupp and his third wife, Appolina Rupp, who also predeceased him.

In 1921, all of the children of Karl Gustav Giehrach were of age.

On February 1st, 1928, George Rupp conveyed the lot upon which he had built the one-story frame factory, to his son, William Rupp. George Rupp died August 9th, 1928, and by his will, devised the remaining lot, upon which the six-room frame house was erected to his son, William Rupp.

The bill of complaint was filed after George Rupp's death and the complainants are the four children of Karl Gustav Giehrach and devisees named in his will, with their respective spouses. It alleges that George Rupp conveyed the lots in question to Frederick Deitz for nominal, or no consideration, pretending to the orphans court of the county of Hudson that

Deitz was a real *bona fide* purchaser, and thereby practicing a fraud upon the orphans court, and by said fraud inducing the orphans court to order the sale of said lots to Deitz for the sum of $1,700, whereas the value was greatly in excess of that price; that Deitz was only a "dummy" and that the said George Rupp really bought in these lots for his own use and benefit and at his own sale, as administrator, concealing the value and the terms of the purchase from the orphans court and complainants; and that the reconveyance of said lots by Deitz to George Rupp and his wife, Appolina Rupp, was for nominal or no consideration, and that the conveyance by said George Rupp to his son, William Rupp, was for nominal or no consideration.

The complaint further alleges that the said George Rupp lived in the frame dwelling house on one of said lots, known as 17 Lewis avenue, Jersey City, without paying any rent to the estate and that he paid no rent for the frame factory building on the other lot, which he occupied, and that these conveyances by George Rupp to Deitz and by Deitz to George Rupp and by George Rupp to his son, William, were all concealed from the complainants and were meant to defraud them out of their property while they were infants, and contrary to law and void, and that William Rupp was in possession of the lands and premises in question, having paid no consideration for them and having knowledge of the facts of the fraudulent conveyances and the infancies of the complainants; and that complainants had knowledge of this fraud only a few days prior to the filing of the complaint in this cause; that they had trusted their stepfather, George Rupp, who was their guardian and trustee, and were ignorant of the facts and circumstances in connection with the transfers of their property and of the fraud practiced upon them.

The vice-chancellor found that the evidence submitted at the hearing by the complainants sustained these contentions and recommended a decree accordingly.

The first point made by the appellants is that the proceeding to the decree in this cause, in part, constitute a collateral attack on the decree of the orphans court of the county

of Hudson, a court of general jurisdiction acting within the scope of its powers.

Appellants argue that it is not the province of a court of equity to review the judgments of other tribunals, to ascertain whether they have erred in the exercise of their judicial power and discretion in matters over which they had complete jurisdiction, citing *Boulton* v. *Scott's Adm'rs, 3 N. J. Eq. 231.*

The prevailing rule seems to be stated in *Dringer* v. *Receiver of Erie Railway, 42 N. J. Eq. 573* (at *p. 580*), which in turn is a citation from a decision of the supreme court of the United States, in *United States* v. *Throckmorton, 98 U. S. 61,* as follows:

"The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic and collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."

Chancellor Williamson, in *Tomkins* v. *Tomkins, 11 N. J. Eq. 512,* also cited in *Dringer* v. *Receiver of Erie Railway, supra,* said:

"But even in a case where a judgment has been obtained in the absence of a party, and upon a hearing entirely *ex parte.* this court will not try the merits of the case over again where those merits have been properly submitted to the tribunal established by law to hear and adjudicate upon them."

The present proceeding is not precisely between the same parties as the proceeding for the sale of lands in the orphans court, as the majority of the children were then minors and the proceeding was in a way *ex parte;* that is to say, a proceeding to sell lands to pay debts brought by an executor or an administrator is not strictly an action between parties.

It would seem to us that the orphans court tried the merits of the case as to the insolvency of the estate, the necessity of the sale of the lands to pay the debts and the adequacy of the price. It may well be, therefore, that these are not matters extrinsic of the record. But the question of George

Rupp, the individual, buying at the sale of George Rupp, the administrator, was in our opinion a fraud extrinsic of the record.

The fact that no actual consideration passed in the sale by Rupp to Deitz and that there was a secret agreement by Deitz to reconvey to Rupp was not before the orphans court and was in that respect a fraud upon the court.

An examination of the evidence satisfies us that George Rupp was actually the buyer at the sale and that Frederick Deitz was merely an intermediary or a conduit through which the title from Rupp, as administrator, to Rupp, as an individual, passed.

It seems to us that the appellants have misconceived the basis of the complainants' suit. This proceeding is not a collateral attack upon the decree of the orphans court, but a direct attack on the decree because it was obtained through a fraud practiced on the orphans court. The case of *Boulton* v. *Administrators of Scott, supra,* holds:

"Judgments of courts of law are liable to be relieved against on account of fraud in the procurement of them, and the same principle applies to decrees on judgments of the orphans court."

In the petition of George Rupp to the orphans court to obtain an order for the sale of the infants' property, he swore he had a purchaser for the property for $1,700, named Frederick Deitz, the defendant, whereas the truth is this man was a "dummy" used to enable this administrator, George Rupp, to obtain the property for himself.

We find no merit in appellants' first point.

The second point raised by appellants is that the sale by George Rupp to Frederick Deitz, and the reconveyance by Deitz to Rupp was not voidable for fraud.

Appellants argue that the mere fact that there was a reconveyance from Deitz to Rupp does not of itself furnish any basis for avoiding the sale. The agreement to repurchase must exist at or before the time of the original sale, and in support, appellants cite *Wortman* v. *Skinner, 12 N. J. Eq. 358,* to the effect that if an administrator, at public or private

sale, sells lands upon an agreement, made before or at the sale, that the lands are to be bid off in the name of some other person, but for his benefit, equity will set aside the proceedings as fraudulent in law. But any agreement made, however soon afterwards, with the purchaser for a conveyance to the administrator is not within the rule.

We have no quarrel with the principle of law thus enunciated. It is, however, not applicable to the case under consideration, for the evidence conclusively shows that the agreement between Rupp and Deitz was made prior to the sale.

Appellants further argue that complainants' proof was based upon illegal evidence taken in violation of the fourth section of the Evidence act, wherein the vice-chancellor over objection, admitted the testimony of Deitz, a party to the suit, as to transactions had with and statements made by George Rupp in the suit in which the representative of his estate was a party defendant. The answer to this is that there was plentitude of testimony unobjected to, clearly establishing the fact that Deitz paid Rupp no money for the property in question, received none from him and that his participation in the conveyance was for the purpose of doing a favor to Rupp, a friend, and that it was at Rupp's request that Deitz bought the property in for Rupp and that the entire transaction was negotiated through Rupp and for Rupp's benefit.

It is elementary that an administrator cannot purchase at his own sale either by himself or through the intervention of another. It is not necessary to prove fraud in order to set aside such a sale in equity. *Culver* v. *Culver, 11 N. J. Eq. 215; Smith* v. *Drake, 23 N. J. Eq. 302.*

We find no merit in appellants' second point.

Appellants' third and last point is that the complainants are guilty of laches. The bill of complaint was not filed until eight years after the youngest child became of age.

At the time of the original sale, Mary Giehrach was of full age. Thirteen years elapsed between the institution of the suit and the sale as alleged.

It is a well settled rule in equity that in cases of fraud

the time limited within which the action must be brought will not commence to run until the discovery of the fraud, or until the complainant was in a situation where, by the exercise of reasonable diligence, he would have discovered the fraud. *Smith* v. *Drake, supra; Lincoln* v. *Judd, 49 N. J. Eq. 387.*

Appellants argue that the elements of fraud relied on might easily have been ascertained from the public records or, at least, the complainants put on inquiry.

In *Smith* v. *Drake, supra,* the chancellor said that the record of the deeds is no presumptive notice of the fact of fraud, even to those of full age. The suit in the *Smith Case* was commenced seventeen years after the oldest son of the intestate and five years after the youngest son came of age.

The item which constitutes the laches must depend upon the circumstances.

There is nothing in the instant case to indicate that the complainants knew anything about the transfers of the lots, or had any reason to suspect the fraud which had been perpetrated upon them by their stepfather. Apparently they made no inquiry nor any examination of the records to determine in what manner their own father had provided for them.

Mr. Justice Bodine, speaking for this court in the case of *Scheel* v. *Jacobson, 112 N. J. Eq. 265,* a case decided at the present term of this court, quotes Vice-Chancellor Green in *Hall* v. *Otterson, 52 N. J. Eq. 522* (at *p. 535*), as follows:

"A person cannot be deprived of his remedy in equity on the ground of laches, unless it appears that he had knowledge of his rights. As one cannot acquiesce in the performance of an act of which he is ignorant, so one cannot be said to neglect the prosecution of a remedy when he has no knowledge that his rights have been invaded; excepting always that his want of knowledge is not the result of his own culpable negligence."

We are of the opinion that this suit was begun within a reasonable time after the complainants were aware of their rights and that they were, therefore, not guilty of laches.

The decree appealed from should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ.   13.

*For reversal*—None.