STELLA POLLACK and WILLIAM F. HOSEK, as executrix and executor of the last will and testament of Joseph Hosek, appellants-respondents,

*v.*

HAROLD H. BOWMAN and THE PATERSON SAVINGS INSTITUTION, individually and as executors and trustees under the last will and testament of Andrew T. Fletcher, respondents-appellants, and LITTLE SISTERS OF THE POOR OF PATERSON, appellant.

[Argued October 23d, 1945.   Decided May 20th, 1946.]

48

*Messrs. Stuhr & Vogt (Mr. Edward A. Markley, Mr. Raymond J. Lamb, Mr. Walter J. O'Toole* and *Mr. Hugh C. Spernow,* of counsel), for the appellants-respondents, Stella Pollack and William F. Hosek.

*Messrs. Pitney, Hardin & Ward (Mr. Mahlon Pitney,* of counsel), for the respondents and cross-appellants, Bowman and Paterson Savings Institution.

*Mr. William F. Hinchliffe,* for the appellant, Little Sisters of the Poor.

The opinion of the court was delivered by

COLIE, J.

This cause comes before us upon the appeals of Pollack and Hosek, executrix and executor of the estate of a deceased life tenant under the will of Andrew T. Fletcher and upon the appeal of Little Sisters of the Poor, a charitable corporation and the residuary legatee under the said will. The executors and trustees of the Fletcher estate, Harold H. Bowman and Paterson Savings Institution have filed a cross-appeal.

The cause was heard before Vice-Chancellor Fielder whose conclusions are reported in *23 N. J. Mis. R. 63*. The opinion below states the facts in detail and consequently there is no necessity to restate them herein.

The main appeal raises the following questions as to the conduct of Bowman and the Paterson Savings Institution acting as executors and trustees of the Fletcher estate—(1) were they guilty of fraud or lack of good faith; (2) did they exercise reasonable care in handling the Fletcher estate; and, (3) if they did not, and mismanaged the estate to the loss of complainants, may they be surcharged for such loss in the face of the fact that the Orphans Court has passed upon their final account as executors and has also passed upon numerous intermediate accounts as trustees? The cross-appeal of Bowman and Paterson Savings Institution challenges that part of the decree below directing the sale of all the common stocks remaining in the estate and surcharging the trustees with such loss as may result from such sale.

The Vice-Chancellor found no evidence of fraud or bad faith upon the part of either Bowman or the Paterson Savings Institution and our examination of the record leads to the same conclusion.

On the question of reasonable care, the inquiry has two distinct and separate phases. The first arises from the sale to one Hastings of all of the capital stock of Bakers & Consumers Compressed Yeast Co., hereinafter referred to as Yeast Company; the other arises from the retention in the trust of common stocks which the decedent Fletcher held in his lifetime and which were turned over to Bowman and the Savings Institution as trustees when they were discharged as executors.

Shortly after Fletcher's death, Bowman and the Savings Institution deemed it advisable to dispose of the Yeast Company, but a ready buyer could not be found until Hastings entered into negotiations to purchase the company. Bowman and the Savings Institution knew that Hastings had been employed as an accountant by Fletcher for years, and between the time of Fletcher's death and the sale of the Yeast Com-

pany, both Bowman and the Savings Institution maintained close contact with Hastings in its management. The terms for the purchase of the Yeast Company stock called for payment of $100,000 in cash by Hastings, and Mr. Paton of the Savings Institution testified to his understanding that Hastings was to borrow the money on his personal credit. The fact was that Hastings could not borrow the money personally but raised the needed sum on the Yeast Company's credit, he having persuaded the executors to delete from the contract a provision which would have prevented him from pledging the assets of the Yeast Company to borrow the $100,000. It is well to bear in mind that up to the time when Hastings persuaded the executors to delete this essential provision from the contract, there had been nothing, so far as the record discloses, to make them suspicious of Hastings. However that may be, the request on the part of Hastings was sufficient to put on Bowman and the Savings Institution the duty of inquiring why Hastings wished the protective provision eliminated. They made no inquiry although Mr. Paton, a vice-president of the corporate executor, testified that he realized that the result would be to leave it open to Hastings to use the assets of the Yeast Company to borrow the $100,000. This failure to make inquiry upon the part of Mr. Paton who handled the matter for the corporate executor and on the part of Mr. Bowman, a New York lawyer, and presumably a man of experience, is inexplicable except upon the basis that they placed great faith in Mr. Hastings. We conceive that it is the duty of executors to base their decisions upon something more substantial than faith and that it is their duty to take reasonable precautions to safeguard the trust estate. When the executors deleted from the contract the provision which would have foreclosed Hastings from pledging the Yeast Company's assets to raise the $100,000 without any inquiry as to the reason for such deletion, they, in our judgment, failed to exercise reasonable care.

Having found that the executors in this respect were negligent, the question remains whether they should be surcharged for the loss resulting therefrom and that turns upon the effect

of the decree of the Passaic County Orphans Court approving the final account of the executors of the Fletcher estate. This court, speaking through Mr. Justice Garrison in *Shearman v. Cameron, 78 N. J. Eq. 532,* said that "It is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard. \* \* \* The legal question is whether the procedure of the court afforded an opportunity to litigate, not whether the parties concerned availed themselves of it." The only exceptions to this rule are in cases where there is fraud, mistake, injustice, or lack of jurisdiction, or in cases where assets come to hand after the filing of the account. *Cf. Clapp, Wills and Administration in New Jersey,* § *376.* The complainants-appellants urge us to disregard this well-established rule and to adopt in its. stead the statement of Vice-Chancellor Fielder in *In re Shaw, 122 N. J. Eq. 536,* that "To estop a *cestui que trust* on the ground of implied acquiescence, from complaining against a breach of trust by his trustee, it must appear by full and satisfactory proof that the *cestui* knew all the facts, understood his legal rights and acted deliberately in not objecting to an investment he knew, or should have known, he had the right to object to." There were many features in which *In re Shaw, supra,* differs from the instant case. In that case the trustee set up a single trust whereas the will directed the setting up of separate trusts; the trustees invested in illegal investments contrary to the directions of the will and furthermore the trustee in making investments was dealing with itself which, as the Vice-Chancellor said, is "an act the law does not countenance."

The executors' account filed in 1931 gave to Joseph Hosek, through whom the appellants Pollack and Hosek derive their status, the opportunity to litigate and not having done so, appellants may not do so eleven years later. They are clearly in laches and the subject-matter is *res adjudicata.*

With respect to the common stocks, the retention of which is the basis upon which it is sought to surcharge the trustees,

the situation, so far as laches and estoppel is concerned, is more glaring. The Orphans Court rule in effect when the executors' account and the seven intermediate trustees' accounts were filed required a statement listing the assets constituting the trust and this was annexed to the various accounts filed. We hold that the statement of assets required by the Orphans Court rule to be annexed to the account is a part thereof and that an interested party, desiring to do so, must make timely objection to any item or items shown on the statement. In this case no objection was made for eleven years from the date when the executors' account was filed with a list of the stocks annexed thereto.

The cross-appeal of Bowman and the Savings Institution is directed to that part of the decree ordering the trustees to sell all corporate stocks still held by the trustees within fourteen days of the date of the decree, and directing that the trustees be surcharged for the difference between the amounts realized on such sales and the market value of the respective stocks on July 31st, 1938, the closing date of the account allowed by the Orphans Court decree of October 20th, 1938.

We are of the opinion that the decree is erroneous in directing the trustees to sell all the stocks in view of the fact that there was an attack upon the retention of but eight of them. Furthermore, we think that the selection of July 31st, 1938, as the date upon which the loss, if any, was to be calculated has no firm basis in reason. However that may be, we find that the trustees were not guilty of want of due care in retaining these stocks. It must be borne in mind that when these trustees took over the management of the trust upon their discharge as executors, that the country was then in the grip of a devastating depression. As trustees, they took over 26,050 shares of Standard Brands stock, the decedent's largest holding, at a then value of $478,668.75, and held them for about two years, when they sold 11,000 shares for approximately $363,000. Subsequently the stock declined to a point where it was selling at approximately $3 a share, and we take judicial notice of the fact that as of this date, it has advanced to approximately $13 a share. In the meantime,

it has uninterruptedly paid dividends. In the light of after events, it is clear that the trustees would have done well had they sold all of the holdings when they disposed of the 11,000 shares in 1932-1933. Viewing the action of the trustees in retaining the corporate stocks during this period in light of the world-wide financial depression and the uncertainty of the times; bearing in mind the fact that the stock was income-producing, we believe that the trustees were free of negligence in retaining these stocks and consequently that they should not be surcharged because of the decline in values.

The decree of the court below is reversed to the extent above indicated, and the cause will be remanded to the Court of Chancery, there to be dealt with in accordance with this opinion.

McGEEHAN, J. (Concurring.)

Complainants below sought to surcharge the defendants as executors and trustees. The final account of the executors was settled by decree of the Orphans Court on September 17th, 1931, and thereafter the trustees had seven intermediate accounts settled by that court. I agree with the majority that the claims against the executors, arising out of the sale of the Yeast Company, are barred by laches and that the subject-matter is *res adjudicata. Shearman* v. *Cameron, 78 N. J. Eq. 532.* The claims against the trustees, arising out of the handling of the Hastings notes and the continuance of the investments in the common stocks, are in a different category. I agree with Mr. Justice Heher that neither laches nor estoppel precludes the beneficiaries from holding the trustees to accountability in this regard. *In re Shaw, 122 N. J. Eq. 536.* However, I conclude, as did the majority, that the trustees, under all the evidence, did exercise good faith and reasonable discretion in both instances. As to the continuance of the investment in the common stocks, the trustees are protected by statute from surcharge if the continuance is "in the exercise of good faith and reasonable discretion." *R. S. 3:16-12.*

Judge Wells joins in this opinion.

HEHER, J. (Dissenting in part.)

I concur in the conclusions of my brethren of the majority on the issues relating to the sale of the Yeast Company.

But I entertain the view that Fletcher's trustees were guilty of culpable negligence in the retention of the common stocks, and should be surcharged with the consequent loss. The proofs demonstrate that the fiduciaries knew these securities were in major part highly speculative, and that the interest of the *cestuis* required their liquidation, but nothing was done in the face of a continually falling market, primarily for the reason that they were in disagreement as to whether further speculation was advisable. This is indubitably shown by correspondence between the trustees. It is not a question of "good faith," but of "due care." *R. S. 3:16–12* is not a shield in these circumstances. *In re Ward, 121 N. J. Eq. 555; affirmed, Ibid. 606.*

And I cannot agree that laches and estoppel preclude the *cestuis* from holding the fiduciaries to accountability in this regard. The scheduling of the assets of the trust upon the filing of the trustees' several accounts, pursuant to a rule of the Orphans Court, did not impose upon the *cestuis* the duty of raising the question of reasonable care as respects the management of the investments. The fiduciaries tendered no such issue until the filing of the account now under review. They were under the duty of reasonable discretion; and the law lays no obligation upon the *cestuis,* on pain of estoppel, to enforce performance of that duty by unremitting vigilance against imprudent administration by the fiduciaries. *Vide In re Shaw, 122 N. J. Eq. 536.* The intermediate accounts did not reveal that losses had been sustained by the retention of the securities. The *cestuis* were not thereby advised by all the facts and circumstances attending the handling of the particular investments. The doctrine of *res judicata* is not invoked; nor is it applicable. *In re Hazeltine, 119 N. J. Eq. 308; Weyman v. Thompson, 52 N. J. Eq. 263.* In such circumstances, no duty of inquiry or action rests upon the *cestuis;* they may assume the exercise of reasonable care and diligence in the management of the trust

estate. This is precisely what such fiduciaries are employed to do, and undertake to do; and they cannot cast the burden of their negligence upon the *cestuis* by the simple expedient of thus scheduling the securities constituting the trust *res,* not under a statute which attaches specific legal consequences to the act, but a mere rule of court which does not purport such an office. The failure of duty long pre-existed the date fixed by the learned Vice-Chancellor; that was an arbitrary selection which has no basis in the proofs.

I would modify the decree accordingly.

Mr. Justice Perskie and Judge Rafferty join in this opinion.

*For modification on opinion*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, COLIE, OLIPHANT, DILL, FREUND, JJ. 8.

*For modification, alia*—HEHER, PERSKIE, WELLS, RAFFERTY, McGEEHAN, JJ. 5.