GRACE B. DONNELLY, *ET ALS.*, PLAINTIFFS-RESPOND-
ENTS, v. JOHN H. RITZENDOLLAR AND WILHELMINA
RITZENDOLLAR, DEFENDANTS-APPELLANTS.

Argued November 9 and 16, 1953—Decided December 14, 1953.

97

*Mr. Martin L. Haines* argued the cause for the appellants (*Messrs. Dimon, Haines & Bunting,* attorneys).

*Mr. Robert Peacock* argued the cause for the respondents.

The opinion of the court was delivered by

VANDERBILT, C. J. Victor Ritzendollar died on September 12, 1918 leaving a will which was duly admitted to probate by the Surrogate of Burlington County. Under the terms of the will three executors were appointed—the plaintiff Eliza C. Ritzendollar, who is the decedent's widow, the defendant John H. Ritzendollar, his son, and Blanchard H. White, an attorney-at-law of this State, now deceased. The testator gave his home in Chatsworth outright to his widow and then provided that the Hedger House, which was the family homestead, should go to her and on her death or remarriage to his children Anna and Elizabeth until they reached 21 years of age, with the remainder over to the

defendant John H. Ritzendollar. Other properties, including several residences and cranberry bogs, were devised equally to the widow and the two daughters. The residue of the estate was to go to the two daughters when they reached 21 years of age, but until then the income was to be used for their maintenance and education.

Shortly after the testator's death the relations of the three executors became strained, especially between the plaintiff Eliza C. Ritzendollar and the defendant John H. Ritzendollar. In 1925 Mrs. Ritzendollar obtained the services of separate counsel. In that year John H. Ritzendollar and Blanchard H. White filed their final accounting as executors of the estate, while the account of Mrs. Ritzendollar was not filed until 1932. Exceptions were filed to both accounts and after hearings thereon final judgment on the accounts and on the exceptions was rendered by the Burlington County Orphans' Court on September 1, 1932. On January 24, 1933 Anna Ritzendollar executed a release and refunding bond covering her interest in the estate, while on August 15, 1935 George E. Wills, administrator of the estate of Elizabeth V. Ritzendollar, the other daughter of the decedent, executed a release and refunding bond on behalf of her estate.

During the course of their administration of the estate of Victor Ritzendollar the executors made deeds of various properties, each of which was signed by all three executors. Many of these properties were reconveyed to John H. Ritzendollar, some almost immediately after the sale and others within ten years thereafter. In 1948 Eliza and the heirs and next of kin of Anna and Elizabeth instituted this action in the Chancery Division of the Superior Court, the amended complaint filed in 1950 alleging among other things that "by fraud, coercion and threats" the defendant John H. Ritzendollar had disposed of the Hedger House property belonging to Eliza, that various premises in which Eliza, Anna and Elizabeth had an interest under the will had been sold by the defendant and no accounting therefor had been made for the purchase price, and that he effected a con-

veyance of these properties to himself contrary to law. The complaint demanded an accounting by the defendant John H. Ritzendollar of the monies received from these conveyances and for the rents, issues and profits from these properties, that he be chargeable as trustee of these monies for the benefit of the plaintiffs, and that various conveyances by the executors and the reconveyances to the defendant be set aside as fraudulent, and that the defendants be ordered to reconvey these premises to the plaintiffs.

At the pretrial conference the parties stipulated to the use in evidence for all purposes of the entire transcript of the hearings in 1932 in the Burlington County Orphans' Court on the accounts and the exceptions thereto. Prior to trial the Superior Court, on defendant's motion, transferred the case to the Burlington County Court, saying:

"Under authority of *Carton v. Borden*, 8 *N. J.* 352, 85 *Atl.* 2d 257–259, it is this court's feeling that the jurisdiction of this court and in the County Probate Court is co-extensive; that the County Court can render full relief in this matter, it has done most of the work in this case, anyway, and this court feels that the trial would be expedited by referring this matter to the County Court."

Considerable testimony was presented at the trial in the Burlington County Court showing that although Eliza Ritzendollar as one of the executors signed the deeds here involved she was not informed of what she was signing, and that the other co-executors took care of all the estate matters and refused to inform her or the other beneficiaries of their actions. Although finding that as to most of the properties the plaintiffs had failed to establish their case, the trial court held that as to three of the conveyances the plaintiffs should prevail. Accordingly it adjudged: (1) that the conveyance of decedent's one-half interest in the cranberry bogs to Jonathan H. Kelsey and the reconveyance to the defendant John H. Ritzendollar by deed dated some seven weeks later were voidable, and that a trust would be impressed on these premises in favor of the plaintiffs and that the defendants should account for one half of the profits and

losses and proceeds of any lands sold from the premises by them; (2) that the conveyance of a one-half interest from the Applegate Land and Improvement Company to the defendant executor was in settlement of water rights necessary for the operation of the premises, and therefore the deed for one-half interest therein was voidable and a trust was impressed upon the premises in favor of the plaintiffs, and the defendants were ordered to account for one-half of the profits and losses from these premises and the proceeds of any tracts of land sold therefrom; and (3) that the conveyance by the executors to William H. Absalom and the reconveyance to the defendant by deed dated the same day were voidable and a trust was impressed upon the premises in favor of the plaintiffs and the defendants were ordered to account to the plaintiffs for the proceeds of the sale thereof. The trial court further ordered the defendants to file an accounting in accordance with the judgment.

From the rulings of the trial court the defendants appealed and we certified the appeal on our own motion while it was pending in the Appellate Division of the Superior Court.

The judgment of the trial court is adequately supported by the evidence and in fact defendants do not strenuously argue to the contrary. They do, however, urge several affirmative defenses which they claim warrant a reversal of the judgment.

I.

Initially the defendants claim that the County Court had no jurisdiction to impress a trust and to require an accounting, arguing that the Chancery Division of the Superior Court alone has exclusive jurisdiction in this field. Although this issue was not raised below we consider it here in keeping with our policy to do so where "the questions raised on appeal go to the jurisdiction of the court below or when they are matters of great public concern." *Morin v. Becker*, 6 *N. J.* 457, 460 (1951). We believe that not only does this question go to the jurisdiction of the court below but it is also a matter of great public concern.

The present County Courts were created by the *Constitution of* 1947, which provides:

"There shall be a County Court in each county, which shall have all the jurisdiction heretofore exercised by the Court of Common Pleas, Orphans' Court, Court of Oyer and Terminer, Court of Quarter Sessions, Court of Special Sessions, and such other jurisdiction consistent with this Constitution as may be conferred by law." (*Art.* VI, *Sec.* IV, *par.* 1)

This jurisdiction may be altered by the Legislature:

"The jurisdiction, powers and functions of the County Courts and of the Judges of the County Courts may be altered by law as the public good may require." (*Art.* VI, *Sec.* IV, *par.* 4)

The former Orphans' Court was a creature of statute and its jurisdiction was confined to the subjects committed to its cognizance by statute, *Miske v. Habay*, 1 *N. J.* 368, 374 (1949). Among the powers of the Orphans' Court which were transferred to the County Court by the provision above quoted was that of hearing and determining all controversies respecting, *inter alia*, "the right of administration and guardianship, and the allowance of the accounts of executors, administrators, guardians or trustees" and of compelling accountings by "executors, administrators, guardians and trustees under wills," *R. S.* 3:1–2. Such was the jurisdiction exercised by the Burlington County Orphans' Court when it allowed the final accounts of the executors of the estate of Victor Ritzendollar on September 1, 1932, after hearing and deciding the various exceptions to the accounts. This jurisdiction of the Orphans' Court along with all other powers it possessed passed to the County Court by virtue of *Article VI, Section IV, paragraph* 1 of the *Constitution of* 1947. The *Constitution of* 1947 also provided that

"the County Courts, in civil causes including probate causes, within their jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." (*Art.* VI, *Sec.* IV, *par.* 5)

The purpose of this provision was to make sure that "subject to law, cases properly brought in the County Courts will be completely determined by allowing equitable defenses and counterclaims," *Report of the Committee on the Judiciary*, reprinted in 2 *Constitutional Convention of* 1947, 1192 (1951).

This constitutional provision has received considerable judicial attention since its effective date, September 15, 1948. In *Miske v. Habay, supra*, 1 *N. J.* 368, the question was whether the County Court, as successor to the powers of the Orphans' Court, had jurisdiction to entertain and adjudicate an account tendered by the putative guardians of a mental incompetent whose appointments were void for want of notice of the proceeding. There the court held that the complainants were not guardians *de jure* but rather *de facto* or *de son tort*, and therefore the Orphans' Court, and thus the County Court as its successor, was without jurisdiction, since the settlement of such accounts was within the exclusive jurisdiction of the Court of Chancery. It was held that the County Court could not declare a constructive trust, since equitable relief is permissible only in causes that can be brought originally in the County Court. In *Stier v. Schreiber*, 3 *N. J. Super.* 450 (*Cty. Ct.* 1949), the plaintiff sued on a series of promissory notes. The defendant filed an answer and counterclaim, in both of which he set forth equitable grounds of fraud and failure of consideration. The court denied the defendant's motion to transfer the cause to the Chancery Division of the Superior Court, stating that since the original action was clearly within the jurisdiction of the County Court it could also grant equitable relief. In *Tumarkin v. Friedman*, 17 *N. J. Super.* 20 (*App. Div.* 1951), certif. denied 9 *N. J.* 287 (1952), the plaintiff filed a complaint in the County Court seeking damages for breach of a contract, and a return of a deposit made thereunder. One of the defendants, who held the deposit, took no action in the County Court, but instead filed an independent complaint in the Chancery Division of the Superior Court seeking an order directing the plaintiff and the other defendant to

interplead their claims to the deposit. The Chancery Division entered a judgment directing the interpleader and restraining the prosecution of the County Court action as against the stakeholder. On the appeal of this order the Appellate Division reversed, saying:

"In the instant matter all the parties were properly before the County Court and the defendant could readily have sought whatever equitable relief he deemed necessary by way of answer and counterclaim." (at *page* 25)

See *In re Young,* 18 *N. J. Super.* 527 (*Cty. Ct.* 1952).

In *Masi v. Mestice,* 12 *N. J. Super.* 140 (*App. Div.* 1951), the plaintiff had recovered a judgment in 1947 in the Essex County Court of Common Pleas for personal injuries. A writ of execution was issued and the defendant's real estate was sold thereunder on October 25, 1949 by the sheriff to satisfy the judgment. After the sale and delivery of the deed by the sheriff the defendant obtained an order of the Essex County Court setting aside the sale. The Appellate Division of the Superior Court reversed the order of the County Court, holding that, although in order to prevent injustice a court possesses jurisdiction of its own judgment and processes, this jurisdiction expires when the process has been finally executed by the delivery of a deed to the purchaser. The action to set aside the deed was held to be "a purely equitable cause of action beyond the range of its jurisdiction." (at *page* 147)

These decisions clearly delineate the rule that although *Article* VI, *Section* IV, *paragraph* 5 of the *Constitution of* 1947 does not grant to the County Court the power to determine purely equitable actions, once the jurisdiction of the County Court has been properly invoked the court may grant whatever relief is necessary, legal and equitable, in order to dispose of the matters in controversy. In *Carton v. Borden,* 8 *N. J.* 352 (1951), an action was brought in the Chancery Division of the Superior Court to enjoin fiduciaries under a will from disposing of assets of the estate, to compel an accounting, to impress a trust, and to surcharge them. On

its own motion the trial court raised the question of jurisdiction and determined that the case properly belonged in the County Court, and therefore dismissed the complaint. It also decided that the plaintiffs had insufficient interest in the subject matters to support their bringing the action. On appeal from the judgment of dismissal we reversed on the ground that the trial court should have acted to protect the interest of the beneficiaries under the will until the County Court could take over the case. We agreed, however, with the trial court in its ruling that the matter should be transferred to the County Court where the estate was being administered:

"Nor can there be any doubt of the jurisdiction of the Superior Court to grant part of the relief sought by the plaintiffs, but in its discretion it may decline to exercise such jurisdiction in a case where a will has been probated in the County Court where the estate is being administered there, and where the County Court likewise has jurisdiction to grant the relief sought by the plaintiffs. There are cases where it may be necessary to resort to the Chancery Division of the Superior Court instead of the surrogate's court or the County Court in order to obtain complete justice in a single proceeding, see *In re McFeely*, 8 *N. J.* 9, 14 (1951) and the decisions there cited, but this case does not fall within that category. The County Court has ample jurisdiction to give all parties in interest complete relief." (at *page* 357)

The instant case falls within the reasoning of the *Carton* case. The will of Victor Ritzendollar was admitted to probate by the Surrogate of Burlington County in 1918. In 1925 two of the executors submitted their final account to the Burlington County Orphans' Court, while in 1932 the remaining executor, Eliza Ritzendollar, filed her final account with that court. In 1932 the Orphans' Court entered a judgment on the accounting and the exceptions taken thereto. The executors never having been discharged by order of the court, there clearly was a probate cause within the jurisdiction of the Burlington County Court.

The great objective of the judicial establishment set up in the *Constitution of* 1947 and of the rules of court promulgated pursuant thereto by this court is to expedite justice,

to avoid duplicitous litigation and to decide each case on its merits. It would indeed be a backward step if we were to dismiss a case such as this on the ground that the Chancery Division of the Superior Court should have retained jurisdiction when the Burlington County Court, as we have seen, also has jurisdiction. This is not a case where the plaintiffs are instituting an original suit seeking equitable relief as in *Miske v. Habay*, 1 *N. J.* 368, *supra,* and *Stier v. Schreiber*, 3 *N. J. Super.* 450, *supra.* Here the plaintiffs' cause of action arose out of an estate where the executors had not yet been discharged. The Chancery Division, it is true, could in its discretion have retained jurisdiction and decided the questions here presented. It determined, however, that justice would be best served by transferring the action to the Burlington County Court where all the records were available and where previous questions concerning this estate had been litigated and determined.

In the circumstances the Chancery Division properly exercised its discretion in transferring the cause to the County Court.

## II.

The defendants claim that the proper parties did not bring this action, that the personal representatives of the deceased children, Anna and Elizabeth, instead of their heirs and next of kin, should have instituted this suit. This contention is without merit. Like most, if not all, states New Jersey has adopted the real party in interest rule. *R. R.* 4:30–1 (formerly *Rule* 3:17–1) provides in part:

"Every action may be prosecuted in the name of the real party in interest; but an executor, administrator, guardian of a person or his property, trustee of an express trust or a party with whom or in whose name a contract has been made for the benefit of another may sue in his own name without joining with him the person for whose benefit the suit is brought."

Obviously here the plaintiffs are the real parties in interest whose rights and property are involved in this action. The

provision that executors and other fiduciaries have the right to bring an action is clearly permissive and not exclusive in its operation, 39 *Am. Jur., Parties, sec.* 18.

## III.

The defendants assert the defense of laches, claiming that the plaintiffs are barred from bringing this action because they have rested on their rights for so many years. The validity of this defense depends upon the facts of the individual case, *Scheel v. Jacobson,* 112 *N. J. Eq.* 265, 268 (*E. & A.* 1933), citing *Smith v. Drake,* 23 *N. J. Eq.* 302, 306 (*Ch.* 1873). The plaintiff, Eliza Ritzendollar, charges in her complaint that "by fraud, coercion and threats" the defendant executor disposed of the homestead property devised to her under her husband's will, while all the plaintiffs charge in effect that he had sold certain properties to himself in breach of his fiduciary duty to them, that he has failed to carry out the terms of the will, and has refused to account to them for the rents, issues, and profits received by him as an executor of the estate. Eliza testified that she was unaware of what she was signing when she executed various deeds at the insistence of the other executors. She was not told what she was signing. In addition, it appears that neither she nor the other beneficiaries under the will, or their successors in interest who are the plaintiffs herein, were aware that the defendant had caused a reconveyance of these properties to himself until 1947 when they caused a search to be made of the county records.

It is beyond dispute that a fiduciary cannot purchase from himself. Self-dealing is prohibited. *McAllister v. McAllister Coal Co.,* 120 *N. J. Eq.* 407, 411 (*Ch.* 1936), affirmed 121 *N. J. Eq.* 264 (*E. & A.* 1937), *Liberty Title and Trust Company v. Plews,* 6 *N. J.* 28, 39 (1950). Even in the absence of fraud such a sale would be set aside. *Giehrach v. Rupp,* 112 *N. J. Eq.* 296, 302 (*E. & A.* 1933). Here self-dealing is alleged, and to this is added the allegation and proof of fraud in withholding assets from the beneficiaries

of the estate. It appears quite clear from the evidence that the defendant executor failed to make a full disclosure of his actions to the beneficiaries under the will, and that they for many years were unaware of what he had done. Here it appears that until 1947, one year prior to the institution of this action, the plaintiffs were unaware of his self-dealing and his failure to fully account to them for the assets of the estate. As stated in *Scheel v. Jacobson, supra,* 112 *N. J. Eq.* 265, 269, "a person cannot be deprived of his remedy in equity on the ground of laches, unless it appears that he had knowledge of his rights." See *Melosh v. Melosh,* 125 *N. J. Eq.* 486, 491 (*Ch.* 1939). Likewise in *Giehrach v. Rupp, supra,* 112 *N. J. Eq.* 296, the Court of Errors and Appeals stated:

"It is a well-settled rule in equity that in cases of fraud the time limited within which the action must be brought will not commence to run until the discovery of the fraud, or until the complainant was in a situation where, by the exercise of reasonable diligence, he would have discovered the fraud. *Smith v. Drake, supra; Lincoln v. Judd,* 49 *N. J. Eq.* 387." (at *page* 302).

See also *Liberty Title and Trust Co. v. Plews, supra,* 6 *N. J.* 28, 41–42.

Under all the facts in this case it would be improper to apply the doctrine of laches and for the same reasons we see no merit in defendants' contention that the plaintiffs are bound by estoppel or acquiescence.

## IV.

Defendant executor asserts that since the plaintiff, Eliza Ritzendollar, was one of the executors who signed the deeds she was a party to any fraudulent conveyance and therefore is barred from recovery here under the doctrine of unclean hands. The evidence fails to sustain this claim. The fraud attached not to the conveyance itself but rather to the defendant's scheme, which was clearly unknown to Eliza, to obtain a reconveyance of these properties to himself. Nor is there any merit to the contention that since

Anna and the personal representative of Elizabeth Ritzen-dollar executed releases and refunding bonds to the executors, their successors in interest, who are all the plaintiffs herein except Eliza, are bound thereby. The natural effect of the execution of these bonds and releases is clearly vitiated by the fiduciary's self-dealing and his failure to fully account for the assets of the estate. See 7 *New Jersey Practice* (1952) (*Clapp, Wills and Administration*), sec. 876.

V.

Finally, the defendant executor contends that the first and final account of the executors allowed by the Burlington County Orphans' Court on September 1, 1932 bars the claims of the plaintiffs in this action under the doctrine of *res adjudicata,* relying on *Liberty Title and Trust Co. v. Plews, supra,* 6 *N. J.* 28. That case holds contrary to defendant's contention, for there we specifically recognized that such a judgment may be reopened where a fiduciary has been guilty of fraud:

"We recognize that 'it is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard' and that this general rule applies to decrees settling accounts. *Shearman v. Cameron,* 78 *N. J. Eq.* 532, 536 (*E. & A.* 1911). But the courts have recognized exceptions to this rule in cases where there is fraud or mistake, see *Pollack v. Bowman,* 139 *N. J. Eq.* 47, 51 (*E. & A.* 1946), and it is also so provided by statute, *R. S.* 3:10–18. A trustee, as a fiduciary, is under a duty to make full and complete disclosure of all transactions in relation to his trust. He is permitted neither to conceal nor to misrepresent, and if he fails in his duty to disclose the true facts so as to give notice to interested parties of any illegal or improper investments, it amounts to fraud such as will permit a decree approving his account to be opened. 'If the trustee has been guilty of fraud by way of concealment or misrepresentation in presenting his account and procuring the approval of the court, the settlement may be opened.' 4 *Bogert, Trusts and Trustees* (1935) 2844." (at *page* 39)

"The argument is also advanced by the trustee that *R. S.* 3:10–18, as amended by *L.* 1947, *c.* 398, *p.* 1250, § 1, renders the 1932 account conclusive and binding upon the parties and their privies.

We concur, however, with the conclusion of the Appellate Division that the recent amendment to this statute can have no effect upon the finality of a decree entered before its passage. Its operation is prospective, not retrospective. We take this occasion to note, however, that the amendment in question was passed by the Legislature shortly after the decision in the *Pollack* case, and apparently represents a partial codification of the holding in that case. This being so and the statute specifically providing that a decree may be opened for fraud or mistake, it does not appear that the decree in the instant case would be free from attack even if the statute antedated it." (at *pages* 40–41)

Seeing no merit in the defenses here presented, the judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and OLIPHANT—2.