FRANK HAGUE, complainant-respondent,

*v.*

JOHN WARREN, defendant-appellant.

[Argued October 27th, 1947. Decided May 13th, 1948.]

*Messrs. Milton, McNulty & Augelli* (*Mr. John Milton*), for the complainant-respondent.

*Messrs. Parsons, Labrecque, Canzona & Combs* (*Mr. Theodore D. Parsons*), for the defendant-appellant.

The opinion of the court was delivered by

SCHETTINO, J.

Complainant, Frank Hague, filed a bill in Chancery against the defendant, John Warren, to obtain discovery in aid of complainant's defenses to an action pending in the Monmouth County Common Pleas Court.

In the law action Warren sought to recover damages for libel. By amended answer, Hague there pleaded among other things that the publications were true, privileged, constituted fair comment and were based upon probable cause.

The bill in Chancery sought no relief other than discovery. The bill alleges that "the matters herein sought by way of discovery from the defendant herein, John Warren, are sought solely in aid of and are material to the establishment of the matters hereinabove recited and which are set forth as constituting the seven separate defenses of the complainant herein in his amended answer to the aforesaid complaint of the defendant herein * * *."

Warren moved a recusation against the Chancellor and also to strike the bill. Both motions were denied and the orders thereon are here for review.

Appellant urges a number of grounds. We find one meritorious. Before dealing with it, we shall briefly dispose of the remaining contentions.

Upon the filing of the bill, Vice-Chancellor Egan advised an order to show cause with *ad interim* restraint, returnable before him at Jersey City. Warren moved before Vice-Chancellor Berry, whose vicinage included Monmouth County, to dismiss the restraint. Vice-Chancellor Berry declined to hear the motion stating that Chancellor Campbell had authorized him to say that prior to the filing of the bill, counsel for Hague had consulted with the Chancellor with respect to vicinage, that the Chancellor considered the cause of action to be transitory and therefore properly presentable to any Vice-Chancellor, and that the Chancellor suggested to counsel that the application be made to a Vice-Chancellor sitting in Hudson County, mainly because of the crowded condition of Vice-Chancellor Berry's calendar.

Thereupon, Warren, on notice, presented to Chancellor Campbell a petition recusing the Chancellor on the ground that he had advised a party to the action prior to the filing of the bill. Warren relied upon *R. S. 2:26-193*. The Chancellor denied the petition. We find no legal error in that ruling.

The vicinage rules were made by the Chancellor for the administration of proceedings in his court. It was within his power to allocate matters among the several vicinages to the end that the work of the court might be more evenly distributed and expeditiously handled. *R. S. 2:26-193* was not intended to preclude inquiries of the Chancellor with respect to such matters, and the Chancellor's determination of vicinage did not constitute the giving of an opinion within the scope of *R. S. 2:26-193*.

Warren further argues that Vice-Chancellor Egan was without jurisdiction because he acted in violation of the rule relating to vicinage, and therefore the restraint should have been vacated and the bill dismissed. What we have already stated with respect to the petition of recusation adequately disposes of this contention.

Warren also urges that Hague was guilty of laches. The summons and complaint in the law action were served on September 4th, 1942. On September 22d, 1942, Hague demanded particulars. A motion was addressed to the demand

and on September 17th, 1943, counsel agreed upon a disposition of the motion. On December 2d, 1943, a rule to plead issued against Hague and he filed his answer on March 23d, 1944.

There then followed applications by Warren for interrogatories and an examination before trial which applications were disposed of by stipulation of counsel on June 15th, 1944. Beginning in September, 1944, the trial of the case was adjourned several times upon applications by Hague. On March 3d, 1945, Hague filed his amended answer. On March 12th, 1945, Warren replied.

The bill for discovery was filed on March 19th, 1945. The bill related to the separate defenses which apparently first appeared in the amended answer filed on March 3d, 1945. The parties were not at issue with respect to those defenses until Warren replied on March 12th, 1945. Since the bill was filed seven days later, Hague obviously was not guilty of laches.

Warren next contends that the bill should have been dismissed because Hague alleged in his bill that he had not sought discovery at law whereas Hague had in fact demanded particulars. The demand for particulars related to the claim made in the complaint and had nothing to do with the discovery sought in Chancery in support of the separate defenses. The point made is accordingly without substance.

We now consider the remaining and decisive point.

Warren, objecting *in limine* to the intervention of Chancery, moved to dismiss the bill on the ground that the complainant had an adequate remedy at law.

The bill does not allege that the remedy at law is inadequate, nor is that claim asserted here. It is not disputed that the court of law is fully competent by way of examination before trial (*R. S. 2:27–172–177*), inspection of books, papers and documents (*R. S. 2:27–169–171*), and interrogatories (*R. S. 2:27–165–168*) to grant the same measure of relief which equity could give in this case if it may properly take jurisdiction.

Complainant seeks to justify the bill on the ground that the acquisition by courts of law of the power to order dis-

covery did not deprive equity of its original jurisdiction to grant that relief. We agree that originally equity's jurisdiction to grant discovery in aid of an action at law was exclusive; that the assumption by courts of law of jurisdiction originally equitable did not operate to oust Chancery of jurisdiction; and that, upon such assumption by law, the jurisdictions of law and equity in such cases became concurrent.

However, the question presented is not whether equity has jurisdiction of the bill but rather whether equity may properly exercise that jurisdiction in a case in which a court of law has already taken cognizance of the controversy and is itself able to grant complete relief. This question obviously is not controlled by decisions upholding the power of Chancery to intervene, either before or after judgment at law, on the basis of an equity which the defendant can not assert in a court of law because of that court's inability to deal with it.

Complainant contends that, if Chancery's jurisdiction is conceded, it rests in Chancery's "discretion" to determine whether or not that jurisdiction should be exercised, and that this court cannot reverse that determination. In effect, it is contended that this court must ignore developments at law and measure the validity of Chancery's action as if we were still sitting in the days when law was impotent in the situation here presented.

With that view, we cannot agree.

Under complainant's view what, if any, is the basis upon which Chancery determines whether or not it will exercise its concurrent jurisdiction in a case in which a law court has already taken jurisdiction?

Complainant does not contend that all litigants may, as of right, invoke equity's concurrent jurisdiction in a case in which a court of law has taken cognizance of the controversy. That proposition obviously could not be accepted. The confusion in our judicial system would be utter and the gains of centuries at law would be nullified. If relief in equity is not available as of right to all who seek it, how shall equity determine which prayer to grant and which to deny? If

inadequacy of legal remedy is not the test, what principle guides the exercise of that jurisdiction? We can think of none.

Logically explored, complainant's contention must lead to the proposition that Chancery's power to exercise concurrent jurisdiction, notwithstanding the prior acquisition of jurisdiction by a court of law, is wholly without standard or basis for its exercise. It would follow that Chancery, presented with two identical litigations on a given day, could choose to take jurisdiction in one and refuse jurisdiction in the other. Such exercise of power would be arbitrary and foreign to our system of government. There must be some standard for the exercise of judicial power other than whim or caprice.

It is sometimes said that the grant of equitable relief is a matter of grace. If by "grace" is meant "favor," such may have been the rule when Chancery was incubated. But under constitutional guarantees of equal protection and due process of law, it can hardly be supposed that the grant or denial of equitable relief may rest upon fancy or favor. All litigants in equity are entitled to the same result in identical situations, and the claim to that result has the stature of a right. "For if the constitutional provision 'due process of law' or, as it is sometimes called, 'the law of the land' or, as the English phrase it, 'the rule of law,' means anything, it should mean equality in the determination of the rights of those affected." *Grobholz* v. *Merdel Mortgage Investment Co.* (*Court of Errors and Appeals, 1934*), 115 N. J. Eq. 411, 415.

Equity, no less than law, is bound to follow established principles. To say that a jurisdiction is discretionary does not imply that its exercise is free from the precedents of equity jurisprudence. "There are certain principles on which courts of equity act, which are very well settled. The cases which occur are various; but they are decided on fixed principles. Courts of equity have in this respect no more discretionary power than courts of law. They decide new cases as they arise by the principles on which former cases have been decided, and may thus illustrate or enlarge the operation of those principles; but the principles are as fixed and certain

as the principles on which the courts of common law proceed." *Bond* v. *Hopkins (1802), 1 Schoales & Lefroy Rep. 413, 428-429.* "While the equitable remedy has been termed 'discretionary,' the exercise of the discretion must needs be guided by principles of equity and justice." *Henderson* v. *Weber (Court of Errors and Appeals, 1944), 131 N. J. Law 299, 302.* "An 'equity' is not a chancellor's sense of moral right, or any vague or indefinite opinion as altruism, but is a right cognizable in a court of chancery, governed by established and fixed precedents." *W. D. Cashin & Co.* v. *Alamac Hotel Co., Inc. (Court of Chancery, 1925), 98 N. J. Eq. 432, 437.*

Our decisions establish the principle which must control the exercise by Chancery of its concurrent jurisdiction in cases in which a court of law has already taken cognizance of the controversy. That principle is that equity shall not interfere unless it appears that in some respect the court of law is unable to grant the full measure of relief obtainable in equity. "This is the principle by which the exercise of our equitable jurisdiction has since been guided." *Pridmore* v. *Steneck (Court of Errors and Appeals, 1937), 122 N. J. Eq. 35, 37.* See, also, *Smith* v. *Smith's Administrator (Court of Chancery, 1879), 30 N. J. Eq. 564; Sweeney* v. *Williams (Court of Errors and Appeals, 1883), 36 N. J. Eq. 627; Chase* v. *Chase (Court of Chancery, 1892), 50 N. J. Eq. 143; Schoenfeld* v. *Winter (Court of Chancery, 1909), 76 N. J. Eq. 511;* affirmed *(Court of Errors and Appeals, 1911), 79 N. J. Eq. 219; Commercial, &c., Co.* v. *Southern Security Co. (Court of Chancery, 1926), 100 N. J. Eq. 92;* affirmed *(Court of Errors and Appeals, 1927), 101 N. J. Eq. 738; New Amsterdam Casualty Co.* v. *Mandel (Court of Chancery, 1934), 115 N. J. Eq. 198, 202;* affirmed on other grounds *(Court of Errors and Appeals, 1934), 116 N. J. Eq. 48; El Mora Super Service, &c., Inc.,* v. *Byrnes (Court of Chancery, 1934), 117 N. J. Eq. 342, 345; Metropolitan Life Insurance Co.* v. *Stern (Court of Chancery, 1938), 124 N. J. Eq. 391; Capraro* v. *Propati (Court of Errors and Appeals, 1940), 127 N. J. Eq. 419; Verdi* v. *Price (Court of Errors and Appeals, 1941), 129 N. J. Eq. 355; Lewis*

v. *Morgan* (*Court of Chancery, 1942*), *132 N. J. Eq. 343;* *Township of Ewing* v. *Trenton* (*Court of Chancery, 1945*), *137 N. J. Eq. 109; In re Levy* (*Court of Chancery, 1946*), *137 N. J. Eq. 575.* Courtesy between courts of concurrent jurisdiction permits no other conclusion.

In *Capraro* v. *Propati, supra,* a bill in Chancery alleged two causes of action, one within the concurrent jurisdiction of law and equity, and the other within the sole jurisdiction of law. A court of law had already taken jurisdiction of the cause of action within its sole jurisdiction and the determination of that case would have disposed of the issues involved in the other cause of action. Notwithstanding the existence of the concurrent jurisdiction mentioned, this court held that Chancery erred in taking jurisdiction for the reason that law had taken cognizance of litigation in which it was capable of disposing of the entire matter. Accordingly, the decree was reversed.

In *Verdi* v. *Price, supra,* Chancery refused to strike a bill to enjoin proceedings at law. The bill alleged, among other things, that equity's intervention would avoid circuity of action and multiplicity of suits. This court reversed and directed equity to dismiss the bill, saying (at *pp. 358-359*):

"While its original jurisdiction in this regard remains unimpaired, equity will not take cognizance of a cause of action where, through joinder of parties and causes of action, the entire controversy may be speedily and effectually determined in one action at law. Our modern procedure affords an ample remedy in this regard. *Woodbridge* v. *DeAngelis, 125 N. J. Law 579.* Where there is concurrent jurisdiction of the subject-matter, equitable intervention rests in sound judicial discretion; and, where the primary rights, interest or estate is legal, the court which first takes actual cognizance of the controversy 'ordinarily becomes thereby exclusive.' *Capraro* v. *Propati, supra.*"

In *Capraro* v. *Propati* and *Verdi* v. *Price* the stated principle was invoked to determine which tribunal should decide the meritorious issues of the controversy. *A fortiori* the same principle applies in cases in which concurrent jurisdiction involves ultimately a mere matter of procedure.

The soundness of the foregoing principle may be easily illustrated. Let us assume that a litigant at law, instead of applying for a new trial in that forum on a ground there available, seeks in equity a new trial on the basis of equity's original jurisdiction developed when the power of the courts of law to order a new trial was severely limited. Can it be said that a court of equity could to-day intervene in the controversy notwithstanding the present adequacy of the legal remedy and justify such intervention on the basis of its concurrent jurisdiction? Surely, such interference with the conduct of litigation in the courts of law could not be tolerated. It was held long ago that, in the absence of a showing that law was incompetent to grant full relief, an exercise of that jurisdiction by equity must be reversed. This was one of the grounds for unanimous reversal in *Hannon* v. *Maxwell* (*Court of Errors and Appeals, 1879*), *31 N. J. Eq. 318*. This court there said (at *p. 329*):

"The disuse of such bills results from the fact that, since the relaxation by the common law courts of the rules for the granting of new trials, scarcely any legal ground for a rehearing can now be asserted in the common law tribunals. As courts of law have extended their jurisdiction over the subject, courts of equity have in this instance withdrawn theirs, in accordance with the principal that, where a court of law can furnish adequate remedy, equity will not interfere."

Further (at *p. 330*):

"* * * The bill should have clearly disclosed that the application was based upon a matter of which the circuit was powerless to take cognizance. This it fails to do, and in this respect the bill is demurrable."

The stated principle guiding the exercise of equity's concurrent jurisdiction is peculiarly appropriate in this case. Discussion of the original jurisdiction of equity and the survival of that jurisdiction notwithstanding the acquisition of like jurisdicton by courts of law may tend to obscure but cannot hide the inequity of the proceedings here under review. Although the law court was fully able, on simple motion within the cause, to grant whatever aid Hague would be entitled to receive, the orderly conduct of the proceedings

in that tribunal was needlessly interrupted by an original action in another court.

If that procedure is to be permitted, it is obvious that an impecunious litigant might well be exhausted and "the obvious effect of it would be to allow the complainant capriciously to oust the court having rightful prior jurisdiction, and to select his own tribunal simply for the purpose of prolonging the litigation at a greatly increased expense." *Chase* v. *Chase* (*Court of Chancery, 1892*), *50 N. J. Eq. 143, 147.*

Moreover in granting discovery, Chancery might take a view of the issues at law and the materiality and relevancy of the proof sought, at variance with the views of the court in which the main action will be tried. We should not permit the possibility of such ·conflict where the remedy at law is adequate.

The settled principle that equity shall not exercise its concurrent jurisdiction after a court of law has taken cognizance of the controversy between the parties, unless it appears that the remedy at law is inadequate, affords a sensible and workable basis for the relation between equity and law. The ideas which gave rise to equity and mark its ultimate boundaries still guide the exercise of its jurisdiction. In *Pridmore* v. *Steneck* (*Court of Errors and Appeals, 1937*), *122 N. J. Eq. 35, 38,* this court said:

"The basis of original equitable cognizance of this class of cases was the entire absence of jurisdiction at law. * * *

"The growth of the jurisdiction of the common law courts has, *in consonance with the fundamental distinction between the two jurisdictions,* placed *corresponding curbs* upon the exercise by courts of equity of the common jurisdiction. This does not constitute an absolute limitation of equity's original jurisdiction; it is rather in the nature of a mere restraint upon its exercise *in accordance with the dictates of the distinguishing principle adverted to.* The exercise of this concurrent equitable jurisdiction rests in the sound discretion of the court, *guided by these principles,* and depends upon the special circumstances of the individual case." (Italics supplied.)

The cases of *Howell* v. *Ashmore* (*Court of Chancery, 1852*), *9 N. J. Eq. 82; Shotwell's Administratrix* v. *Smith* (*Court of Chancery, 1869*), *20 N. J. Eq. 79*, and *Miller* v. *U. S. Casualty Co.* (*Court of Chancery, 1900*), *61 N. J. Eq. 110*, are distinguishable. When *Howell* v. *Ashmore* was decided, discovery before trial could not be obtained at law. The Chancellor there implicitly conceded that, if discovery were obtainable at law, equity would not interfere (*p. 90*). In *Shotwell's Administratrix* v. *Smith* the Chancellor found that discovery at law was then inadequate because the plaintiff could not be compelled to answer; the only penalty being that the court could stop him from proceeding in the suit. That deficiency in the remedy has been cured. *R. S. 2:27–167.* Moreover a sufficient basis for equitable relief was therein alleged for the complainant sought the cancellation of notes and bonds and, hence, the discovery was in aid of other relief obtainable only in equity. In *Miller* v. *U. S. Casualty Co.* no proceeding was pending at law. The bill sought only discovery preliminary to a contemplated action at law. There, accordingly, was no conflict between courts with respect to the exercise of jurisdiction.

In *Hohmann* v. *Corkran* (*Court of Chancery, 1926*), *100 N. J. Eq. 234;* affirmed in this court for the reasons given below (*Court of Errors and Appeals, 1928*), *102 N. J. Eq. 333,* Chancery dismissed a bill for discovery in aid of an action at law upon the ground that three applications for discovery had been made and denied in proceedings at law, so that in effect Chancery was being asked to review the rulings there made. The Vice-Chancellor properly stated (at *p. 235*) that "It would appear that under the act above referred to there is a complete remedy at law, and it is elementary that under such circumstances this court will not act." He added that "I do not mean, however, to suggest that this court has in any way been deprived of its ancient jurisdiction of discovery in aid of actions at law where application is made to this court in the first instance. That jurisdiction still exists in a proper case." What is a "proper case" was not defined. Where the controversy is already pending at law and there is no showing that discovery at

law is inadequate, a "proper case" for equity's intervention is not established.

The order denying the motion to strike the bill is accordingly reversed and the cause is remanded to the Court of Chancery with instructions to dismiss the bill.

HEHER, J. (Dissenting.)

The question here is simple enough. Has equity's auxiliary jurisdiction to give a discovery in aid of the prosecution or defense of an action at law been superseded or abrogated by the statutes investing the common-law courts with the power to compel discovery in the principal action by means of interrogatories, inspection of books and papers, and summary examination before trial?

Compulsory discovery proper without relief, in aid of proceedings at law, is one of the ancient inherent exclusive powers of Chancery. It is a branch of the original auxiliary jurisdiction of equity. As early as the reign of Henry VI Chancery entertained jurisdiction to give a discovery needed to sustain an action at law, without reference to any equitable question. In the time of Queen Elizabeth Chancery was in the habit of retaining jurisdiction of causes for the settlement of purely legal rights and questions, although equity's jurisdiction was invoked simply for a discovery and there was no need for other equitable relief. Lord Coke relates that vigorous protests against the practice by the common-law judges led the Chancellor to abridge this exercise of the equity jurisdiction; and this limitation upon the jurisdiction to grant relief where the subject-matter of the controversy was strictly legal, devoid of equitable features or incidents, has since had general recognition. *1 Spence's Equitable Jurisdiction 677-680.*

Here, Chancery did not seek to retain jurisdiction of the cause for full relief as well as to give discovery; rather it entertained a bill for pure discovery, not concerned with direct reliefs, but in aid of the defense to the action at law by compelling the disclosure of evidence pertinent to the issue therein framed, with a mere temporary stay of the proceedings at law until discovery was had. Discovery of this

class relates only to the procuring of evidence for use in the principal action; and the questions of relevancy and competency of the testimony adduced by the bill are determinable by the judicial tribunal in which the law action pends. *Price* v. *Tyson, 3 Bland, Ch.* (*Md.*) *392.*

The rationale of the holding of my brethren of the majority is that, while originally equity's jurisdiction to grant a discovery proper was exclusive, the enactment of the statutes for discovery at law (*R. S. 2:27–165 et seq.; 2:27–169 et seq.; 2:27–172 et seq.*) served to render concurrent the jurisdiction of law and equity in this field; and that equity's jurisdiction cannot "properly" be exercised "in a case in which a court of law has already taken cognizance of the controversy, and is itself able to grant complete relief." It is said that the principle of the cases of *Capraro* v. *Propati, 127 N. J. Eq. 419,* and *Verdi* v. *Price, 120 N. J. Eq. 355,* touching the exercise of concurrent jurisdiction, is *a fortiori* applicable to cases such as the present, "in which concurrent jurisdiction involves ultimately a mere matter of procedure." This I conceive to be a misapprehension of fundamental principle. It fails to differentiate power and policy.

The auxiliary jurisdiction of equity is a distinct branch in itself, quite different in nature from the other two. In its original and true scope and meaning, it is "in fact a special case of the 'exclusive,' since its methods and objects are confined to the equity procedure;" in suits invoking this jurisdiction "no remedy is either asked or granted; their sole object is the obtaining or preserving of evidence to be used upon the trial of some action at law." *Pom. Eq. Jur.* (*5th ed.*), § *142.* Equity's auxiliary jurisdiction "belongs entirely to the *procedure* by which rights are enforced and remedies are obtained, and is not in any manner concerned with the *reliefs* themselves which are granted, except so far as reliefs must always be indirectly affected by the procedure. Its object, scope, and functions are wholly confined to the procuring of evidence; and it consists of special judicial methods by which, under certain particular circumstances, the evidence needed in pending or anticipated litigations may be obtained." *Ibid.,* § *190.* On the other hand, the con-

current jurisdiction embraces all those civil cases in which "the primary right, estate, or interest of the complaining party sought to be maintained, enforced, or redressed is one which is created and is cognizable by the law, and in which the remedy conferred is also of the same kind as that administered, under the like circumstances, by the courts of law. The primary right, estate, title, or interest which is the foundation of the suit must be legal, or else the case would belong to the exclusive jurisdiction of equity; and the law must, through its judicial procedure, give *some* remedy of the same general nature as that given by equity; but this legal remedy is not, under the circumstances, full, adequate, and complete." *Capraro* v. *Propali, supra; Pom. Eq. Jur. (5th ed.), §§ 137-139, 173 et seq.* Professor Pomeroy does not include the exertion of equity's auxiliary jurisdiction in that category; indeed, it is clearly excluded by the terms used to define it. I do not perceive this distinction in the prevailing opinion.

The decisive inquiry is not as to the power of the law courts to give the same measure of discovery, but rather whether the adoption of the enabling statutes served to supersede or abrogate equity's original jurisdiction to give a pure discovery without relief. I am clear that on principle and authority this question must be resolved in the negative. The rule that equity will not intervene if a court of law can compel discovery is confined to suits for discovery *and relief;* it is not applicable to suits for discovery proper, *i. e.,* the pure exercise of the auxiliary jurisdiction. As pointed out by the author of the most recent edition of *Pom. Eq. Jur. (the 5th),* in a note to *section 197a,* the sweeping declaration by Chancellor Kent in *Gelston* v. *Hoyt, 1 Johns. Ch. 543, 547,* that the inability of the law court to compel discovery was a condition prerequisite, was overruled in *Marsh* v. *Davison, 9 Paige 580,* in so far as the rule there stated was applicable to suits for discovery alone. As the editor said, an action at law cannot be withdrawn into a court of equity for compulsory discovery and final relief unless it is shown by the bill that a discovery is needed, and that the evidence sought, material to the issue, is not obtainable from witnesses or by

the ordinary testimony in the law court; but this is not true of a suit for discovery proper without relief. The latter proceeding is proper, he says, "not only when the plaintiff therein is without other means of proof, but also in aid of his other evidence, or even to dispense with the necessity of other evidence. All the text-writers are agreed upon this view of the object and use of 'discovery' proper: *Hare on Discovery 1, 110; Wigram on Discovery 4, 5, 25; Story's Eq. Pl.,* § *319 note 3."* In *Mitford's Equity Pleading (Jeremy's ed.) 307,* it is said: "The plaintiff may require this discovery, either because he cannot prove the facts, or in aid of proof, or to avoid expense." In *Earl of Glengall* v. *Frazer, 2 Hare 99, 105,* Wigram, V. C., said: "The plaintiff is entitled to a discovery, not only in respect to facts which he cannot otherwise prove, but also as to facts the admission of which will relieve him from the necessity of adducing proof from other sources." A court of equity does not lose its jurisdiction to give a discovery proper, without relief, because the powers of the courts of law have been so enlarged as to obviate the need for the equitable remedy in some circumstances. *Carpenter* v. *Winn, 221 U. S. 533; 31 S. Ct. 683; 55 L. Ed. 842.*

It is the general rule that the jurisdiction of equity over a given subject-matter is not lost by the mere fact that the common-law courts have also been invested with the same power. And it is the settled doctrine in this State that the modern statutes providing for discovery in actions at law through interrogatories, inspection of books and papers, and so on, did not oust equity of its original jurisdiction to direct discovery proper or in anywise abridge this auxiliary jurisdiction. *Miller* v. *U. S. Casualty Co., 61 N. J. Eq. 110; Howell* v. *Ashmore, 9 N. J. Eq. 82; Shotwell's Admr'x* v. *Smith, 20 N. J. Eq. 79; Hohmann* v. *Corkran, 100 N. J. Eq. 234;* affirmed, *102 N. J. Eq. 333.* The remedy at law is cumulative merely. The statutory extension to courts of law of a right to administer relief previously administered only by courts of equity does not serve to curtail the jurisdiction of the courts of equity unless (so it was said) prohibitive or restrictive words are used in the statute; thenceforth the jurisdictions are concurrent. *Sweeny* v. *Williams, 36 N. J.*

*Eq. 627.* But that case has reference to the grant of substantive reliefs in equity and not to the exercise of the auxiliary jurisdiction for a discovery proper. The view that statutory provisions for discovery at law do not abolish or modify equity's auxiliary jurisdiction to give a pure discovery has had general acceptance. *27 C. J. S. 14; 17 Am. Jur. 6.*

In England, like statutes adopted in the reign of Queen Victoria were declared to be permissive and not an interference with the equity jurisdiction for discovery in aid of a cause of action or defense at law. *British Empire Shipping Co.* v. *Somes, 3 Kay & J. 433.* In that case Vice-Chancellor Wood declared: "But, in reference to this argument, it should be observed that the common law courts have now the power in all cases, and not merely in cases of arbitration, of calling for the production of books and papers. And yet this court has held that such power does not prevent a court of equity from ordering such production, either because courts of equity have concurrent jurisdiction with the common law courts, or because the relief granted in this respect by the common law courts is not commensurate with that which this court would extend." *Vide Lovell* v. *Galloway, 17 Beav. 1.* There was no abridgement in England of this auxiliary jurisdiction of equity until the adoption of the Judicature Act of 1873 (*36 & 37 Vict., c. 66*), which consolidated all the superior courts into one tribunal having an all-embracive jurisdiction, save those purely ecclesiastical, and abolished the distinction between legal and equitable actions and permitted the uniting of both causes of action in one proceeding, and provided for interrogatories and inspection of documents. *Vide Attorney-General* v. *Gaskill, L. R. 20 Ch. Div. 519.* And the question now raised will become moot when the judicial provisions of our own recently adopted Constitution of 1947 and the activating statutes and rules become effective. It was in part to obviate such administrative problems arising from duality of jurisdiction that the merger of the law and equity functions was so long advocated and finally effectuated in the Constitution of 1947. But the case at hand is governed by the Constitution of 1844, as amended, and we are in duty bound to enforce it as it is written.

The holding of the majority constitutes in essence an abolition of this auxiliary jurisdiction to give discovery after the commencement of the action at law, for the rationale of the decision is that since the statutes providing for a disclosure of evidence by interrogatories, inspection of documents, and so on, renders resort to equity unnecessary, equity's jurisdiction is no longer exercisable once the law action begins. There is no right to interpose a bill in equity for discovery proper unless an action at law pends or is imminent. *State* v. *Elizabethtown Water Co., 83 N. J. Eq. 216; Pom. Eq. Jur. (5th ed.) 197b.* The view thus taken I regard as judicial invasion of the legislative domain, assuming the legislature itself may abolish this inherent ancient function of equity. But is it not embedded in the Constitution of 1844 and our interpretive decisional law that the pre-existing inherent equitable jurisdiction is immune to legislative abolition or modification? Under that constitution, New Jersey retained the ancient common-law and equitable jurisdictions. Article VI, section I, paragraph 1. Article X, paragraph 1, provides: "The several courts of law and equity, except as herein otherwise provided, shall continue with the like powers and jurisdiction as if this constitution had not been adopted." *Vide Harris* v. *Vanderveer's Executor, 21 N. J. Eq. 424; State, Dufford, Pros.,* v. *Decue, 31 N. J. Law 302; Traphagen* v. *Township of West Hoboken, 39 N. J. Law 232; Jersey City* v. *Lembeck, 31 N. J. Eq. 255; In re Thompson, 85 N. J. Eq. 221; Hedden* v. *Hand, 90 N. J. Eq. 583.* Only recently the principle was reiterated and applied by this court in the *Caruba Case, 139 N. J. Eq. 404;* affirmed, *140 N. J. Eq. 563,* although there was a difference of opinion as to whether the statute there under review has reference to an inherent power of equity in contempt. Cases elsewhere are not a certain guide, for in this State the jurisdiction of Chancery has a constitutional basis which renders it immune to legislative attack; and yet, as we have seen, the prevailing rule elsewhere is that such statutory discovery does not annul or modify the inherent discovery jurisdiction of equity unless there is specific statutory provision to that effect.

The case of *Hannon* v. *Maxwell, 31 N. J. Eq. 318,* bears

no analogy. Bills for a new trial for fraud, mistake, accident, or wrongful acts or omissions in the trial at law itself, without any special equitable element or feature, was a jurisdiction rarely exercised, even in early times, and became a part of the obsolete jurisdiction of the English Chancery upon the introduction of the practice of granting new trials in the law courts some three hundred years ago; and thus it was not comprehended in the pre-existing equitable jurisdiction saved by the cited provisions of our Constitution of 1844. *Larabrie* v. *Brown, 1 DeG. & J. 204; Bateman* v. *Willoe, 1 Schoales & L. (Ir.) 201, 204, 206; Pom. Eq. Jur. (5th ed.),* §§ *1360-1365.* Mr. Justice Reed in *Hannon* v. *Maxwell, supra,* said that the rule "which restricts the interference of courts of equity with verdicts or judgments, in courts of law, has ever been one of great strictness," and that even before the common-law courts assumed the power of granting new trials, Chancery "interfered with reluctance," and suits of this character in the English equity courts were few. The disuse of this jurisdiction is included by Mr. Spence in the exceptions to the general rule that governed the English Chancery of retaining its original jurisdiction, though the courts of law had assumed or obtained an equitable jurisdiction. But the auxiliary jurisdiction to give a pure discovery is not included among those branches of equity jurisdiction which had become obsolete because cognizable by the courts of law; quite the contrary. *Spence's Equitable Jurisdiction 684-704; 3 Blackstone's Com. 52.* Indeed, the present discovery at law was not in existence when the Constitution of 1844 was adopted.

There can be no doubt, I submit, as to the existence of the equitable jurisdiction invoked here. Resort to it may be quite infrequent, but it nevertheless subsists. *Vide section 194* of Pomeroy's work cited *supra.* The fact that litigants are usually satisfied with the discovery afforded by statute in the law courts does not argue against the reality of the power or offer a reason for its nullification. That is not the the judicial province.

Can it reasonably be said that Chancery has erred in exercising an inherent function which indubitably exists, one that

is beyond extinction even by the legislature? I think not. The opinion of the majority denies the jurisdiction. It seems to deny that equitable relief rests in discretion in any circumstances. While I do not entertain the view, it declares that due process and the equal protection of the law render equitable relief a matter of right and not of grace in all circumstances; and this is of necessity a complete negation of equitable jurisdiction in the case before us.

I would affirm the order under review.

Mr. Justice Bodine, Mr. Justice Wachenfeld and Judge Dill join in this opinion.

*For affirmance*—BODINE, HEHER, WACHENFELD, DILL, JJ. 4.

*For reversal*—THE CHIEF-JUSTICE, DONGES, COLIE, EASTWOOD, BURLING, WELLS, FREUND, McLEAN, SCHETTINO, JJ. 9.