29 N.J. Super. 520 (1954)
103 A.2d 19
IN THE MATTER OF THE ESTATE OF LOUIS OPPER, DECEASED.
LEONARD WOLF, A LEGATEE UNDER LAST WILL AND TESTAMENT OF LOUIS OPPER, DECEASED, PLAINTIFF-RESPONDENT,
v.
ADDISON M. OPPER AND PHILIP OPPER, EXECUTORS OF THE ESTATE OF LOUIS OPPER, DECEASED, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1954.
Decided February 18, 1954.
*522 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Mandon Morrill argued the cause for the respondent (Mr. Theodore D. Rosenberg, attorney; Messrs. Cole, Morrill & Berman, of counsel).
Mr. Isadore Rabinowitz argued the cause for the appellants (Mr. Edward H. Saltzman, attorney).
*523 The opinion of the court was delivered by FRANCIS, J.A.D.
The primary question for consideration here is the propriety of the action of the Chancery Division of this court in accepting jurisdiction of the complaint.
The record discloses that Louis Opper and Rebecca Opper, husband and wife, executed a joint and mutual will on December 21, 1949. Louis Opper died May 26, 1950, and as to him the will was probated in the Passaic County Surrogate's Court on July 12, 1950. Appellants were appointed executors of the estate. On March 8, 1952, Rebecca Opper died.
A daughter appealed to the County Court from the probate order on October 9, 1952, alleging that the will was the product of undue influence, duress, fraud and irregularity of execution. A judgment of dismissal and confirming the probate was entered therein on February 10, 1953. An appeal followed but it seems to have been abandoned.
On October 28, 1952, Leonard Wolf, the plaintiff in this suit, claiming to be a legatee under the will, instituted a proceeding in the County Court against the executors, who are also the defendants here, by complaint and order to show cause seeking the filing of an inventory. On February 19, 1953 the inventory was filed.
Up to this point all of the proceedings were in the County Court. Five months after the inventory was recorded this summary action was brought in the Chancery Division by complaint and order to show cause. The objection is voiced that regardless of the jurisdictional issue involved, the suit should have been a plenary one initiated by summons and complaint. R.R. 4:105-3. We pass that conflict to treat with the fundamental inquiry.
The complaint contained exceptions to the inventory on file in the County Court, charged the executors with dereliction of duty and sought a judgment: (1) setting aside the appraisal and inventory, (2) sustaining the exceptions, (3) appointing new appraisers, (4) discharging the executors, *524 (5) appointing new executors and (6) directing certain discovery.
A motion was made to dismiss on the ground that the Chancery Division had "no jurisdiction to hear and determine the matter since all proceedings were had in the Passaic County Court, Probate Division," and "for further grounds as set forth in an affidavit annexed hereto." The affidavit recited the history of the matter substantially as it has been set forth herein. The trial court denied the motion, holding that the action constituted a new proceeding and therefore under In re McFeely, 8 N.J. 9 (1951), jurisdiction should be retained.
Although the motion papers charge lack of jurisdiction, the argument is predicated here, as it seems to have been in the trial court, on the theory that it was improper for the court to accept and exercise jurisdiction because of the status of the matter in the County Court.
Plainly, the Superior and County Courts have concurrent jurisdiction over the subject matter of the action. Donnelly v. Ritzendollar, 14 N.J. 96, 101-106 (1953). So the problem is whether the Chancery Division should have refused to intervene and exercise its jurisdiction since the estate was already properly under the supervision of the County Court.
As indicated by the Donnelly case, supra, and Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951), one of the major objectives of the new Constitution was to permit, in fact to require where possible, the complete determination of a controversy between the parties by the court which first properly obtained jurisdiction over the subject matter.
The Supreme Court sought to infuse this philosophy into the practice and procedure under the new judicial system. In probate matters it was made clear that once the administration of an estate had begun properly in the Surrogate's or County Court and was proceeding within the ambit of that tribunal's jurisdiction, the proceeding should be retained and disposed of there without interference by *525 the Superior Court in the absence of "special circumstances." R.R. 4:105-4; 4:105-1; 4:105-2; 4:105-3. And see N.J.S. 3A:11-4; 6 Clapp, Wills and Administration, § 486, Note 5.
The expression "special circumstances" undoubtedly represents in its minimum import an effort to codify in rule form the limitation imposed by the former Court of Chancery upon itself where it had concurrent jurisdiction with another court.
In Hague v. Warren, 142 N.J. Eq. 257 (E. & A. 1947), it appeared that the law court and the Court of Chancery had concurrent jurisdiction over the particular subject. The law court had already assumed jurisdiction when relief was sought in Chancery. In barring the intervention of Chancery, the Court of Errors and Appeals said:
"However, the question presented is not whether equity has jurisdiction of the bill but rather whether equity may properly exercise that jurisdiction in a case in which a court of law has already taken cognizance of the controversy and is itself able to grant complete relief. * * *
"Complainant contends that, if chancery's jurisdiction is conceded, it rests in chancery's `discretion' to determine whether or not that jurisdiction should be exercised, and that this court cannot reverse that determination. * * *
"With that view, we cannot agree." (142 N.J. Eq. at page 261)
"Our decisions establish the principle which must control the exercise by chancery of its concurrent jurisdiction in cases in which a court of law has already taken cognizance of the controversy. That principle is that equity shall not interfere unless it appears that in some respect the court of law is unable to grant the full measure of relief obtainable in equity. `This is the principle by which the exercise of our equitable jurisdiction has since been guided.' (Citing cases)." (142 N.J. Eq. at page 263).
"The settled principle that equity shall not exercise its concurrent jurisdiction after a court of law has taken cognizance of the controversy between the parties, unless it appears that the remedy at law is inadequate, affords a sensible and workable basis for the relation between equity and law. The ideas which gave rise to equity and mark its ultimate boundaries still guide the exercise of its jurisdiction." (142 N.J. Eq. at page 266).
Thus it may be declared that at the present time the discretion of the Chancery Division to determine whether *526 or not to exert its authority in situations like the one under study is not an uncontrolled or unlimited one. It is one which must be employed in the light of the self-imposed limitation exhibited by the former practice and with an eye to the "special circumstances" standard set out in the rules referred to.
Tested by these considerations, the complaint shows no proper basis for the assumption of jurisdiction by the Chancery Division. Connelly v. Weisfeld, 142 N.J. Eq. 406, 417 (E. & A. 1948); Summerill v. Summerill, 99 N.J. Eq. 502 (Ch. 1926); Thomas v. Thomas, 20 N.J. Misc. 419 (Ch. 1942); Landis v. Vineland Historical etc. Society, 96 N.J. Eq. 246 (Ch. 1924); Streeter v. Braman, 76 N.J. Eq. 371 (Ch. 1909); Filley v. Van Dyke, 75 N.J. Eq. 571 (E. & A. 1909). It follows, therefore, that the trial court mistakenly exercised his discretion in holding the complaint for adjudication.
In our judgment the McFeely case, supra, provides no support for a contrary view. There the Surrogate's Court appointed an administrator. This person died and apparently a dispute arose within the family as to his successor. A complaint was filed in the Chancery Division of the Superior Court seeking the appointment of a substituted administrator. Objection to the exercise of jurisdiction was interposed on the ground that the Surrogate's Court had already assumed control over the estate by the original appointment. The objection was rejected because under the rules an action for the selection of a substituted administrator is a new and independent action and properly within the competence of the Superior Court.
Here the complaint in the Chancery Division was not a new and independent action. It was an interruption of the jurisdiction of the County Court in media res.
Respondent contends that the appeal should be dismissed because review of an interlocutory order is not appealable as a matter of right. We agree that leave to appeal should have been sought. However, since a reversal of the order would terminate the action in the Chancery Division *527 and because the success of our new judicial system depends in some measure upon setting at rest jurisdictional problems such as this, leave to appeal would undoubtedly have been granted. Therefore, we have concluded to treat the case as if such leave had been sought and granted.
A cautionary note must be injected at this point. The instances in which direct appeals have been taken from interlocutory orders are multiplying and our action here is not intended to provide refuge for future cases.
To accomplish a just result it is not necessary to dismiss the complaint; it can be transferred to the County Court for determination. Donnelly v. Ritzendollar, supra; Carton v. Borden, 8 N.J. 352 (1951).
The order denying the motion is reversed and the matter is remanded to the trial court with directions to transfer the complaint to the County Court.