16 N.J. Super. 119 (1951)
83 A.2d 904
WILLIAM WALTZ, PLAINTIFF-APPELLANT,
v.
IRENE WALTZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1951.
Decided October 17, 1951.
*120 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. David Cohn argued the cause for appellant.
Mr. I. Arthur Weiss argued the cause for respondent (Messrs. Weiss & Weiss, attorneys).
*121 The opinion of the court was delivered by JAYNE, J.A.D.
The present appeal invites our attention to the order made in this cause on April 10, 1951, directing the plaintiff-appellant to pay to his wife, the defendant-respondent, the sum of $15 a week for her support pendente lite, a counsel fee of $100 to her attorneys, and costs.
This action was instituted by the husband to recover from his wife the entire proceeds of a bank account on deposit to their credit jointly. The wife not only controverted the plaintiff's alleged cause of action by the averments of her answer, but by way of counterclaim sought judgment against her husband for her support and maintenance. R.S. 2:50-39. It was in the prosecution of the counterclaim that the intermediate order now under review was made.
While the statute does not expressly confer authority to order temporary maintenance in cases of this nature, the courts have not hesitated to make such pendente lite provision for the wife where the pleadings and affidavits warrant that intermediate relief. Vreeland v. Vreeland, 18 N.J. Eq. 43 (Ch. 1866); Adams v. Adams, 125 N.J. Eq. 166 (E. & A. 1939); Wiener v. Wiener, 126 N.J. Eq. 225 (E. & A. 1939).
In a suit for separate maintenance whether on a preliminary application or on final hearing, there must be proof of the two essential elements of the cause of action: first, that the husband has, without any justifiable cause, abandoned his wife or separated himself from her; second, that he has refused or neglected to maintain and provide for her. Dinnebeil v. Dinnebeil, 109 N.J. Eq. 594 (E. & A. 1932); Fallon v. Fallon, 111 N.J. Eq. 512 (E. & A. 1932); Acheson v. Acheson, 124 N.J. Eq. 12 (E. & A. 1938); Friederich v. Friederich, 6 N.J. Super. 102 (App. Div. 1950).
In the present case the counterclaim adequately alleges the requisite elements of the cause of action and by affidavit the wife deposed that her husband separated from her without just cause on November 18, 1950, and except for $116 of his money which she appropriated, he has ever since refused to provide for her maintenance.
*122 It will be expeditious to reproduce here the four following paragraphs from her affidavit:
"7. When my husband abandoned and separated himself from me on November 18th, 1950, toward the end of November, 1950, I wrote to him, and asked him to return to our home. This he has refused to do. He calls me on the telephone about once a week with the threats, `he is going to put me in jail'  `he is going to make me like it'  `he is not going to support me any more  never'  `he planned it that way  he is through'  `he would never come back'  `he wants no part of me.'
8. My attorney, the end of February, 1951, filed an Answer and Counterclaim for Separate Maintenance on my behalf, and since that time, and more particularly on March 3rd, 1951, my husband called me and told me, `to see his lawyer'  `I better have my lawyers withdraw from the case, if I know what's good for me'  `he will make me like it'  `he is having a good time.'
9. On March 8th, 1951, I called my husband at his place of employment, namely, Barkers Foundry, located in Paterson, New Jersey, to tell him, `that some people had called me about renting one of his bungalows at Lake Hopatcong, New Jersey.' At the end of the conversation, he again repeated, `have you been to my lawyer's office,' I told him, `I had my own lawyer,' he repeated, `he was through with me'  `he wouldn't support me  never'  `he was having a good time and he would make me like it.'
10. On Saturday, March 10th, 1951, my husband called me twice. His conversation was quite jumbled, but he again repeated, `he was going to make me like it, and I wouldn't get anything from him, and he wasn't going to support me.'"
In his answering affidavit the husband acknowledged that he and his wife are not cohabiting but denies that he voluntarily separated from her on November 18, 1950. He states that he "was locked out of the home by the action of his said wife." The particulars of her "action" are not divulged. It is not evident that he has since made any effort to return home. Moreover he denied that his wife is destitute and asserted that she has an income ($30 a month) from a roomer and that she is able to work. He is the owner of two bungalows at Lake Hopatcong, New Jersey, which are unencumbered and from which he receives some income during the summer season. He represented the net wages which he regularly receives from the pursuit of his employment to average from $48 to $52 per week.
*123 The ground of appeal seems to be lodged in the contention that the divergent proofs were in equipoise and that in the absence of some corroborative evidence of the verity of the wife's affidavit, the application for temporary relief should have been denied.
It is to be recognized that in a maintenance action as distinguished from one for divorce, corroboration of the plaintiff's testimony is not necessary and the relief can be granted on the testimony of the plaintiff alone where it is deemed credible and adequate. Pinkinson v. Pinkinson, 92 N.J. Eq. 669, 671 (E. & A. 1921); Shore v. Shore, 96 N.J. Eq. 661, 667 (E. & A. 1924); Gerhold v. Gerhold, 109 N.J. Eq. 634 (E. & A. 1932); Zehrer v. Zehrer, 5 N.J. 53, 61 (1950).
That distinction has also been recognized in the consideration of applications for temporary alimony and counsel fees. Suydam v. Suydam, 79 N.J. Eq. 144 (Ch. 1911).
It is of fundamental importance in the exercise of an appellate supervision over an order of this class to realize that the function of the advisory master in such matters is discretionary. Acheson v. Acheson, supra; Shaffer v. Shaffer, 129 N.J. Eq. 42 (E. & A. 1941); Poline v. Poline, 136 N.J. Eq. 207 (E. & A. 1945); Lasasso v. Lasasso, 1 N.J. 324 (1949); Johnson v. Johnson, 4 N.J. Super. 172 (App. Div. 1949).
A discretionary judicial power implies that latitude of decision which enables a judge to decide the issue in the light of the evidential circumstances according to his own sound judgment free from the control of definitely established rules of law. The intervention of an appellate tribunal in the disposition of such matters is not conventionally exercised unless it manifestly appears that the judicial discretion has been mistakenly exercised.
We perceive no justifiable reason to annul or modify the order here under review. Assuredly the allowances are not exorbitant.
Affirmed.