37 N.J. Super. 351 (1955)
117 A.2d 407
JEAN CURLEY, PLAINTIFF-RESPONDENT,
v.
KRYAN CURLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided October 7, 1955.
*354 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James A. Major argued the cause for plaintiff-respondent.
Mr. J. Mortimer Rubenstein argued the cause for defendant-appellant (Messrs. Malkin & Malkin, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought by Mrs. Jean Curley against her former husband, Kryan Curley, from whom she had been divorced, to secure support for herself and three infant children, two of them born of their marriage and the third, Judith, an illegitimate child. After their divorce, which had been secured in California in 1949, Mr. and Mrs. Curley cohabited in New Jersey, and Judith was born. Mr. *355 Curley does not deny paternity; in fact in the statement of facts appearing in his brief here, it is said that Judith was born of this cohabitation.
Subsequently Mrs. Curley brought an action in the Bergen County Juvenile and Domestic Relations Court and obtained an order requiring Mr. Curley to pay her a lump sum of $300 a month for the support of herself and her children. Then she commenced this action in the Superior Court, on the theory that the Bergen County Juvenile and Domestic Relations Court lacked jurisdiction because the Curleys "were not husband and wife."
The Superior Court awarded Mrs. Curley, pendente lite, $150 per month for the support of herself and $75 per month for each of the three infants. 34 N.J. Super. 257. Mr. Curley appeals, raising three questions.
The first question goes to the insufficiency of the affidavits furnished below. On an application by a wife for the support of herself and her children pendente lite, she is obliged to establish, among other things, the extent of their needs, Streitwolf v. Streitwolf, 58 N.J. Eq. 570, 574 (E. & A. 1899), and the extent of her income and means. Verbeeck v. Verbeeck, 93 N.J. Eq. 17, 21 (Ch. 1921); Westerfield v. Westerfield, 36 N.J. Eq. 195 (Ch. 1882); Herr, 10 N.J. Practice 364 (1950).
From the affidavits here, it appears that Mr. Curley is paying Mrs. Curley $300 a month; further that 
"I [Mrs. Curley] have been employed in a clerical capacity * * * but * * * must give up this employment to care for my children.

* * * * * * * *
I have no property of any kind. I live with our children in an apartment for which I pay $92.00 a month. It is absolutely necessary to obtain a private home. One of the children needs extensive orthodontical work, the estimated cost of which is $4,000.00."
This  all that the court had before it on the point  is plainly an insufficient statement as to the needs of Mrs. Curley and her children and a somewhat thin statement as to her earnings and income. We do not see how a court can say on the strength of these affidavits that the $300 a *356 month which is being voluntarily paid by Mr. Curley does not meet the needs of herself and her children pendente lite and that $75 in addition should be forthcoming.
The allowance of support pendente lite is a matter resting in the discretion of the court below, Lasasso v. Lasasso, 1 N.J. 324, 329 (1949); Waltz v. Waltz, 16 N.J. Super. 119, 123 (App. Div. 1951). But manifestly here the affidavits furnished the court with an inadequate basis on which to exercise its discretion. The order allowing support will have to be reversed.
The second point argued here presents a novel constitutional question; but, we conclude, we are obliged to deal with it, as, upon the remand of the case, the parties will straightway be confronted with it. Borawick v. Barba, 7 N.J. 393 (1951) holds that Art. VI, Sec. III, par. 2 of the New Jersey Constitution does not invest the Superior Court with jurisdiction over a cause of action of a mother against a father for the support of their illegitimate child; such a cause is cognizable only in certain inferior courts. N.J.S.A. 9:16-2, 9:16-3, 9:17-1. We are of course governed by that holding. But the question here is different. Here we are called upon to consider whether another provision of the Constitution, Art. VI, Sec. III, par. 4, clothes the Superior Court with power to dispose of the entire controversy before us by reason of the fact that (we might say) two of the three matters in dispute between the parties lie within that court's competence.
The first of these matters is Mrs. Curley's claim for her own support. This claim is cognizable in the Superior Court (see N.J.S. 2A:34-23, expressly applicable where a divorce has been obtained in another state; see also 2A:34-8), but not in a Juvenile and Domestic Relations Court. Cf. Hughes v. Hughes, 125 N.J. Eq. 47 (E. & A. 1939); Caravella v. Caravella, 36 N.J. Super. 447 (App. Div. 1955); N.J.S. 2A:4-18.
Second, there is Mrs. Curley's claim for the support of the illegitimate child, Judith. This (as stated) is cognizable in certain inferior courts, including the Juvenile and Domestic *357 Relations Courts  but not in the Superior Court, Borawick v. Barba, 7 N.J. 393, supra, except as Art. VI, Sec. III, par. 4 of the Constitution may confer authority upon that court pursuant to the argument now being examined.
Third, there is Mrs. Curley's claim for the support of the two legitimate children. This is cognizable in either the Superior Court, N.J.S. 2A:34-23, 9:2-1, or (we may assume, without deciding the matter  the question is not raised in the briefs) a Juvenile and Domestic Relations Court, N.J.S.A. 2A:4-18(b). We may observe as an aside at this point that the order of the Bergen County Juvenile and Domestic Relations Court, providing a lump sum of $300 for the wife and children, cannot be said to be res judicata as to the amount due the children. Mrs. Curley is of course seeking an increase in the award on their behalf. She doubtless (the point has not been raised by the parties) will endeavor to adduce proof as to conditions arising subsequent to the Bergen County Juvenile and Domestic Relations Court order, such as the loss of the salary she has been receiving as a clerk. Where such conditions arise altering the rights of the parties, the order of the Bergen County Juvenile and Domestic Relations Court is no bar to relief in the Superior Court. Lasasso v. Lasasso, 1 N.J. 324 (1949). Nor does the fact that the award was lumped in the lower court preclude a consideration of these matters in the upper court.
The precise question, then, is whether Mrs. Curley is obliged to bring one action against Mr. Curley in the Superior Court with respect to her claim for her own support and a second action against him (which also should be brought in her own name, Kopak v. Polzer, 4 N.J. 327, 331 (1950)) in the Juvenile and Domestic Relations Court (or another inferior court) with respect to her claim on Judith's behalf. Her claim as to the two legitimate children could be joined in the Superior Court action or perhaps (as we have assumed above) the Juvenile and Domestic Relations Court action.
Art. VI, Sec. III, par. 4 of the Constitution, dealing with the Superior Court, provides:
*358 "Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined." (Italics added.)
We think it plain that the term "legal * * * relief," as used in this clause, is not to be confined to the redress afforded by the former Supreme and Circuit Courts at the adoption of the Constitution. We therefore regard it as of no consequence that the relief sought here on Judith's behalf was not cognizable in those courts at that time. Manifestly the jurisdiction of the Superior Court was not laid out in the Constitution in terms of the jurisdiction then existing in the former courts. Mr. Justice Jacobs, as a delegate to the Constitutional Convention, had this to say on the convention floor on August 18, 1947, speaking for a draft of Judicial Article which in this regard is substantially the counterpart of that which was adopted (see 2 Constitutional Convention, 1947, p. 1174):
"* * * you will see that we have deliberately avoided any jurisdictional statements with respect to law and equity." 1 Constitutional Convention, 1947, p. 474.
There was clearly a deliberate endeavor here on the part of the Constitution makers not to follow the methods of the 1844 Constitution and the amendments proposed in 1909, under which the only constitutional power granted to the constitutional courts was the power possessed by a preexisting court. Art. X, sec. I (last sentence), 1844 Constitution; L. 1909, c. 239, p. 380, sec. 5, pars. 2 and 3.
Furthermore, we regard it as of no consequence that the relief sought on Judith's behalf is statutory in origin. Surely the term "legal * * * relief" is not to be limited to such relief as was given by the common law. Folwell's Case, 68 N.J. Eq. 728, 731 (E. & A. 1905).
But  and this is the crux of the matter here  are the words "legal * * * relief" in this context so to be defined *359 as to exclude relief which under a statute is cognizable only in an inferior court? Or does the sweeping "constitutional mandate * * * [for] a unified court system" (see O'Neill v. Vreeland, 6 N.J. 158, 166 (1951), referring to the unification sought in the Superior Court) carry with it an implied grant of authority unto the Superior Court, enabling it to deal with a fragment of the controversy before it that could not have been litigated there, were that the only issue between the parties?
There are no authorities on that question. To resolve it, one must be satisfied with broad pronouncements as to the policies which formed Art. VI, Sec. III, par. 4. Thus in Garrou v. Teaneck Tryon Co., 11 N.J. 294, 304 (1953), the Supreme Court expressed itself in this manner:
"Uppermost in the minds of the constitutional delegates was the desire to end costly piecemeal litigation * * *. Thus they provided generally for the expeditious adjudication of all matters in controversy between parties at one time and place (Const. 1947, Art. VI, Sec. III, par. 4 * * *)."
Similarly in Massari v. Einsiedler, 6 N.J. 303, 307 (1951), it was said:
"One of the designs of the Judicial Article of the 1947 Constitution was to facilitate and expedite the hearing of causes by disposing of all matters, whether legal or equitable, arising in a controversy in one trial and thus avoid multiple trials of the same case. Article VI, sec. III, paragraphs 3 and 4 of the Constitution * * *."
In In re Opper's Estate, 29 N.J. Super. 520, 524 (App. Div. 1954), we had this to say:
"As indicated by [Donnelly v. Ritzendollar, 14 N.J. 96, 101-106 (1953)] and Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951), one of the major objectives of the new Constitution was to permit, in fact to require where possible, the complete determination of a controversy between the parties by the court which first properly obtained jurisdiction over the subject matter."
This then is one of the "great" objectives of the Constitution of 1947, and of the practice implementing it  *360 that is, "to avoid duplicitous litigation" (Donnelly v. Ritzendollar, 14 N.J. 96, 105, 106 (1953)) and a "multiplicity of litigation" (In re McFeely's Estate, 8 N.J. 9, 14 (1951)). Cf. R.R. 4:43-1(b); 1:27D(b).
We are entirely persuaded that the constitutional provision under consideration was designed to be as all-embracing as the following clause which, placed (as it was) in the opening section of the Judicial Article proposed by the Legislature in 1944, Art. V, Sec. I, par. 2, stood out as an overriding command to which the courts were obliged to subjugate themselves:
"* * * subject to rules of the Supreme Court, every controversy shall be fully determined by the court or justice hearing it." 4 Constitutional Convention, 1947, p. 566 (the judges of the Superior Court were termed justices in the Constitution proposed in 1944).
See the similar clause similarly placed in the Constitution drafted by the Commission on Revision of the Constitution, 1942  a clause to be found also in a draft prepared by a committee of the State Bar Association, 1947. 4 Id., p. 560, 587. Indeed, the provision as it was adopted by the people in 1947 seems but a reworking of this earlier clause, in order to bring out its full significance. The present clause aims (subject to rules) at making "any cause" in the Superior Court as efficient a vehicle as practicable for the disposition of "all matters in controversy between the parties," whether legal or equitable; but it in no way attempts to subtract from the comprehensive injunction of the earlier clause, which requires "every controversy" (subject to rules) to be completely disposed of by the court hearing it, an injunction that, certainly as stated in this earlier clause, cast upon the court the power to perform the task given it.
Everything we have read as to the history of the Judicial Article demonstrates that the supreme consideration at work in the establishment of the Superior Court was the demand for a court of original jurisdiction which would have the capacity, in one action, to dispose of an assortment of controversies between the parties, without parcelling the *361 issues out to separate courts and thereby compelling a litigation and relitigation in those courts of overlapping phases of the matter. The pressure of this policy, it is quite evident, shaped the constitutional provision before us.
This being the large purpose of that provision, we think its terms furnish the Superior Court implicitly with the jurisdiction indispensable to the accomplishment of that purpose  even though, except for this clause, one branch of the controversy would have been cognizable only in an inferior court. We would, it seems to us, be thwarting these broad designs in this case if we were to subject the parties here to suits in two courts.
Our decision of course goes no further than this case; we make no attempt to define the full significance of the constitutional clause under consideration. But it is to be observed that here the several "matters in controversy between the parties," arising under N.J.S. 2A:34-23 and 9:16-3, have an unusually close kinship; they all stem from a single subject matter, Mr. Curley's course of conduct and obligations with respect to the support of his family. Besides, the parties to each of these controversies are the same, namely, Mr. and Mrs. Curley. Furthermore, it may be noted, the constitutional clause is very general in character; it was left to rules to work the matter out, and there are no rules applicable here.
The view we reach then is that Art. VI, Sec. III, par. 4 of the Constitution enables the Superior Court under the circumstances here to entertain in one action the claim for the support of Judith and the claims for the support of Mrs. Curley and her legitimate children. We might add that we by no means suggest that this provision of the Constitution gives to the Superior Court original jurisdiction sufficient to dispose of, in one action, some cause comprehended within the "judicial power" (Art. VI, Sec. I, par. 1 of the Constitution), along with a cause cognizable originally in the executive branch of the government, such as a workmen's compensation proceeding. We have no occasion to consider such a matter.
*362 The third point advanced on Mr. Curley's behalf is that the amount allowed, namely $400, by way of a counsel fee on this application for support pendente lite is excessive under the circumstances. We think the point well taken. However, in view of the reversal and the possibility of a renewal of the application on the remand, we will leave it to the trial court to fix a reduced amount which it deems proper in the light of the situation then obtaining.
The order appealed from is reversed with respect to the matters brought before us, namely, as to support and counsel fees.
JAYNE, J.A.D. (dissenting in part).
I concur in the majority opinion to the extent that it reverses (a) the award of alimony (support) pendente lite to the former wife, and (b) the allowance of a $400 fee to her counsel.
However, I find myself unable to agree with the determination of the appeal in its relation to the three children, and in obedience to the provisions of R.R. 2:9-1(a) I state briefly the reasons for my partial dissent.
Of record at the time of the filing of the complaint in the Superior Court was the judgment of the Juvenile and Domestic Relations Court in favor of Mrs. Curley and her children. The award by that court to defendant's former wife is coram non judice. Under N.J.S. 2A:34-8 and 23, the Superior Court was invested with jurisdiction of her claim for alimony. The majority opinion postulates, and I am in accord with, the proposition that the Juvenile and Domestic Relations Court had jurisdiction to enter the judgment in favor of the three children. Vide, N.J.S. 2A:4-18b. So far as appears, no appeal was taken from that judgment, and save for the invalid award to Mrs. Curley, it remains in full force and effect. Nor is it in any wise invalidated (as to the children) by the single award in totality rather than an award in a specific amount to each child. The emendation required to render that judgment efficacious is readily available for the children's benefit, in the court of its entry. That judgment, in its present status, is at *363 least the equivalent of an adjudication of Mr. Curley's liability to the three children, leaving open for determination only the amount to be awarded to each. Indeed, the judgment remains in the control of that court subject to alteration in the light of the future exigencies. Bonanno v. Bonanno, 4 N.J. 268, 276 (1950). In these circumstances, ought we countenance the practice of allowing the mother of the children, as an adjunct of her cause of action in the Superior Court, directly to challenge a judgment of a court of coordinate jurisdiction on the defendant's liability to the children? I think not.
True, our Supreme Court has said: "Our judicial system contemplates that generally all matters in controversy between the parties, whether legal or equitable, will be disposed of in a single action." New Jersey Highway Authority v. Renner, 18 N.J. 485, 492 (1955). But, apart from the interesting constitutional question which is adjudged in the majority decision, as to which I find it unnecessary to express my opinion, it does not seem to me that the salutary objective of the Constitution, even if it be given the sweep accorded it in the majority opinion, was intended to embrace the situation of a case already decided by the statutory court clothed with jurisdiction of the subject matter. In the instant case, there is more than a suggestion of harassment if the defendant is called upon anew to litigate a decided matter. It seems like the same cause of action. Cf. Miller v. Miller, 13 N.J. 555 (1953).
I am also influenced by my conception of the rationale of the Supreme Court's decision in Borawick v. Barba, 7 N.J. 393, 408 (1951), from which I recall the following:
"* * * The purpose that the inferior courts should continue as theretofore, without constitutional addition to or subtraction from their jurisdictions, either directly or by the indirect method of giving the Superior Court a greater participation in their jurisdictions than the predecessor courts had possessed, is manifested in varying degrees by other paragraphs of the Constitution."