848 A.2d 44 (2004)
369 N.J. Super. 75
Lisa A. ACCARDI, Plaintiff-Respondent,
v.
Anthony ACCARDI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 2004.
Decided May 17, 2004.
*46 Michael S. Miller, Newark, argued the cause for appellant (Miller and Miller, attorneys; Mr. Miller, on the brief).
Patrick T. Collins, Livingston, argued the cause for respondent (Franzblau Dratch, attorneys; Mr. Collins, on the brief).
Before Judges PRESSLER, PARKER and R.B. COLEMAN.
*45 The opinion of the court was delivered by
PARKER, J.A.D.
Defendant appeals from post-judgment orders entered in this matrimonial matter on October 29, 2002, March 18, 2003, and April 1, 2003.
The parties were married on August 15, 1987, and had three children: Nicole on August 24, 1988, Alexandra on July 1, 1991, and Gabrielle on May 4, 1993. After a trial, a judgment of divorce was entered on February 22, 1996, awarding joint custody of the children with plaintiff having physical custody; directing defendant to pay $6,000 per month in child support,[1] provide health insurance for the children and pay all unreimbursed medical, dental and psychological expenses; directing defendant to pay $2,500 per month in rehabilitative alimony for four years from December 1, 1995; directing defendant to maintain $250,000 in life insurance for each child's benefit until she is emancipated; directing the parties to contribute to the children's college expenses to the extent they are able; dividing defendant's pension equally in a Qualified Domestic Relations Order (QDRO); ordering the parties' condominium sold and the proceeds distributed equally; and ordering distribution of the remaining property owned by the parties. The judgment also allocated tax exemptions for the children to defendant until plaintiff "has sufficient earned income to benefit from a tax exemption, following which defendant will be entitled to claim two of the three children."
In 1998, two years after the judgment of divorce was entered, defendant moved to decrease child support based upon changed circumstances, namely, a reduction in his 1997 income from $350,000 to $169,000. After a plenary hearing, an order was entered on November 4, 1998, reducing child support to $2,500 per month, "subject to future increases if so warranted by defendant's future income."[2] In a lengthy statement of reasons, the hearing judge reviewed the parties' finances in detail and stated that child support calculated in accordance with the Child Support Guidelines (Guidelines) "would yield a child support obligation of approximately $456 per week or a little less than $2,000 per month." She declined to reduce support to that amount, however, "because the children's activities and lifestyle have been planned upon the expectation of a much larger amount and because [defendant's] income not only includes additional benefits, but is to at least *47 a limited extent controllable by [defendant]for example, as to how many billable hours are worked."[3] The hearing judge noted that "[a]t the hearing, the parties agreed to exchange tax returns on an annual basis in order to see if there are significant changes in current incomes, and the court so orders." That provision, unfortunately, set the stage for the quagmire through which we now wade.
In November 2000, plaintiff moved to increase child support based upon defendant's 1999 income. The motion was argued on March 9, 2001, and on May 24, 2001, an order was entered[4] directing that a plenary hearing be scheduled to determine: whether plaintiff was entitled to an increase in child support; whether tax exemptions should be reallocated; and whether plaintiff was entitled to counsel fees. The parties were directed to exchange all documents they intended to offer into evidence at the hearing.
The plenary hearing was never scheduled, however, and on August 29, 2001, plaintiff filed a new motion requesting, among other things, a date for the hearing. Rather than schedule the hearing to resolve the issues pending since November 2000, the instant motion judge heard oral argument on October 12, 2001, and directed the parties "to submit initial papers and reply papers (submitted to each other simultaneously) to the court directly prior to the end of November 2001. Oral argument on support modification to be conducted within thirty days." That order scheduled the motion with disputed issues for oral argument, rather than a plenary hearing. The oral argument did not occur within thirty days, however.
On February 12, 2002, fifteen months after the initial motion was filed, and after lengthy argument, the motion judge reserved decision to the dismay of plaintiff's counsel who commented that "we've spent such an inordinate amount of time talking about it without resolution." On March 1, 2002, the motion judge entered an order directing defendant to: (1) pay retroactively $3,895 per month in child support, including $745 per month in extraordinary expenses, for the year 2000; (2) pay retroactively $3,175 per month, including $745 per month in extraordinary expenses, for 2001;[5] (3) continue providing health insurance for the children and pay unreimbursed therapy expenses; and (4) pay plaintiff's counsel fees in the amount of $5,000. The order declined to "impute additional income to [plaintiff] because there was no record on which to impute additional sums;" "declined to attribute an `overpayment' of support [to defendant] under [the hearing judge's] order and offset it against future support because that would eliminate the equitable adjustment intended by [the hearing judge];" "declined to use a mandatory pension contribution offset for support because [the hearing judge] had apparently not utilized that offset;" and "declined to add an increment to [defendant's] salary for `perks' because it *48 appeared that the formerly cost-free benefits were now enjoyed with costs." The order included the motion judge's worksheets with the calculations upon which she based support, but did not include a statement of reasons.[6]
Shortly after entry of the March 1, 2002 order, defendant moved pursuant to R. 4:50-1 to correct mistakes in the motion judge's calculations and to resolve a number of issues raised in the motions, but not addressed in the March 1 order, including credits for overpayment of child support; allocation of tax deductions; apportionment of unreimbursed medical expenses; and the current (2002) child support obligation pending a determination of actual child support for 2002.
Although returnable on May 24, 2002, the motion was not heard until July 5, 2002. On that date, again, there was extensive oral argument, with the parties disputing virtually every issue. With respect to defendant's 2000 child support obligations, he argued that the motion judge erred (1) in calculating $9,000 per year or $173 per week for extraordinary expenses and incorrectly added it to, rather than included it in his child support obligation; (2) in calculating an upward adjustment of 14.6 percent for the oldest child; and (3) in calculating support for 2000 based upon plaintiff's attorney's representation of plaintiff's income, rather than plaintiff's 1999 income tax return.[7]
In respect of defendant's 2001 child support obligations, he contended that the motion judge erred: (1) in calculating support based upon plaintiff's attorney's representation of plaintiff's income, rather than her 2000 tax return; (2) in failing to deduct alimony from defendant's income; (3) in failing to recognize as income to plaintiff $16,500 cash that plaintiff received from the sale of a car won in a raffle; (4) in failing to include defendant's other dependant deduction (ODD) for the child of his second marriage; and (5) in miscalculating defendant's 2001 support obligation.
Finally, defendant maintained that in the March 1 order, the motion judge failed to take into account: (1) that he overpaid child support in 2000 and 2001 by $1,630; and (2) plaintiff's ability to pay her own counsel fees. After extensive oral argument on July 5, 2002, no order was entered.[8]
On October 29, 2002, there was yet another oral argument[9] on what the motion judge characterized as a motion and cross-motion. The judge indicated that plaintiff moved for reconsideration of a prior ruling "denying her contribution to childcare," and for counsel fees. The judge also addressed what was apparently a cross-motion by defendant for the judge to recuse herself; to set a visitation schedule; and "a lot of issues ... revolving around Dr. Hagovsky and visitation, and ... issues involving insurance."
Defendant's recusal motion was based upon the fact that the judge had previously recused herself from the case on the ground that she had been an associate of *49 plaintiff's counsel. The judge denied the recusal motion on the record, explaining, "the problem has been here that when one judge recuses him or herself there aren't that many judges around." She further indicated "that [defendant] may also be concerned because he's filed a complaint with the ACJC." We have not been provided with an order memorializing denial of the recusal motion.
On October 29, 2002, the judge entered an order[10] that: (1) recalculated and fixed defendant's child support obligation for 2000 at $3,260 per month, including $745 per month for extraordinary expenses; (2) recalculated and fixed child support for 2001 at $2,536 per month, including $745 per month for extraordinary expenses; (3) found that defendant underpaid child support in 2000 and overpaid in 2001 and directed defendant to pay the difference, $7,886, to plaintiff within thirty days; (4) found that the 14.6 percent upward adjustment of support for the oldest child in the March 1, 2002 order was correct; and (5) directed defendant to pay $7,000 in counsel fees to plaintiff within thirty days.
On December 5, 2002, defendant filed a notice of appeal of the October 29 order. The notice of appeal did not stem the tide of litigation, however. Since the judge failed to address defendant's request to fix his 2002 support obligation, defendant filed another motion requesting her to do so. Plaintiff filed a cross-motion on December 24, 2002, seeking to (1) fix defendant's 2002 child support obligation at $852 per week; (2) enter a judgment of $12,896 "representing the short fall between defendant's proper 2002 child support obligation and the amount actually paid by defendant during 2002;" and (3) attorney's fees in connection with the October 29, 2002 order and this new motion.
In support of his motion and in opposition to plaintiff's cross-motion, defendant contended that: (1) plaintiff refused to provide him with copies of her 2001 state tax returns and canceled checks for the children's 2001 activities; (2)income should be imputed to plaintiff for 2001; (3) plaintiff's claims for the children's extraordinary expenses were unsubstantiated and untrue; (4) he should have been credited with the children's overnight visits; (5) the ODD was not properly calculated; (6) the 14.6 percent increase was inappropriately applied; and (7) counsel fees should be stayed pending appeal. Plaintiff disputed all of defendant's assertions.
Apparently not recognizing that she lacked jurisdiction to address the issues pending appeal,[11] the judge entertained oral argument on March 18, 2003,[12] and entered an order in which she (1) declined to impute income to plaintiff for purposes of calculating child support in 2002; (2) directed plaintiff to provide defendant with proof that she made payment for the children's 2002 summer camp expenses and ordered defendant to include those costs as extraordinary expenses in the 2002 child support calculation; (3) directed *50 defendant to pay extraordinary expenses of $4,850 per year in addition to child support; and (4) deferred the issues of overnights for parenting time credits, counsel fees and timing of re-calculated child support payments to a new return date.
After yet another oral argument on April 1, 2003, the judge entered an order apparently addressing plaintiff's cross-motion. That order: (1) fixed defendant's child support obligation for 2002 at $656 per week, plus $93 per week in extracurricular expenses, totaling $749 a week or $3,220 a month; (2) fixed defendant's child support arrears for 2002 at $7,220, and directed defendant to pay $1,000 per month on the arrears until satisfied; (3) directed defendant to pay $2,500 in counsel fees to plaintiff; and (4) allowed for a reduction in support if the 14.6 percent issue is reversed on appeal.
On May 19, 2003, defendant filed an amended notice of appeal seeking review of the orders entered on March 18, 2003, and April 1, 2003, in addition to the October 29, 2002 order. In this appeal, defendant argues that the judge erred in (1) including a 14.6 percent upward adjustment in basic child support in all three orders; (2) failing to require plaintiff to present proofs of the children's extraordinary expenses in each of the orders; (3) characterizing the children's extracurricular activities as extraordinary expenses, adding them to defendant's support obligations and improperly calculating them in the child support worksheets appended to the orders; and (4) awarding counsel fees to plaintiff.

I
We begin our discussion by expressing our dismay that child support issues initially raised by motion in November 2000 were not heard at all for fifteen months, that a plenary hearing originally ordered in May 2001 was never scheduled, factual issues were decided without a plenary hearing and one judge conducted six "marathon" oral arguments resulting in three orders. Moreover, after the notice of appeal was filed on December 5, 2002, the judge continued to entertain arguments and enter orders on the issues pending appeal.
Defendant has continually objected to the 14.6 percent upward adjustment for child support on the ground that, by virtue of the September 2, 1994 pendente lite order, he was paying unallocated support from the time the oldest child was less than six years old. Plaintiff responds that the December 1, 1995 judgment of divorce fixed child support for the first time and that date should be conclusive as to when the 14.6 percent upward adjustment is applied.
Appendix IX-A, paragraph 17, states:
17. Adjustments for the Age of the ChildrenThe child support schedules are based on child-rearing expenditures averaged across the entire age range of zero through 17 years (total expenditures divided by 18 years). This averaging means that awards for younger children are slightly overstated due to the higher level of expenditures for older children. If an award is entered while the child is very young and continues through age 18, the net effect is negligible. However, initial awards for children in their teens are underestimated by the averaging and should be adjusted upward to compensate for this effect. Due to limitations of the CEX and the Rothbarth estimator, a separate marginal cost for teen-aged children could not be estimated. Based on Dr. Thomas Espenshade's 1980 CEX study, the cost of children aged 12 through 17 was 14.6% above the average expenditures.

*51 Awards entered when a child is less than six years of age should not be adjusted later for age since the higher expenditures for older children were already received during the child's early years.

[Pressler, Current N.J. Court Rules, Appendix IX-A (2000)[13] (emphasis added).]
Our research has not disclosed any prior case law addressing the question of whether unallocated support qualifies as child support for the purposes of applying the 14.6 percent upward adjustment. In our view, however, the resolution of this issue is straightforward. The pendente lite order directing defendant to pay $10,000 in unallocated support obviously included both alimony and child support. Defendant was ordered to pay the unallocated support from August 1, 1994, when the oldest child was five years, eleven months. The unallocated support was $1,500 greater than the combined monthly child support and alimony award in the final judgment.[14]
The language in Appendix IX-1A, paragraph 17, does not distinguish between allocated and unallocated support. It merely provides for an averaging of support from age zero to seventeen resulting in "slightly overstated" awards for younger children. In this case, the unallocated award of $10,000 per month when all of the children were under six gave plaintiff the advantage of the "slightly overstated" award. When the trial judge fixed child support and alimony after the trial, she apparently overstated child support based on the pendente lite order; and when the hearing judge entered the first post-judgment order reducing child support after a plenary hearing, she acknowledged that she did not reduce it to an amount consistent with the Guidelines because of the retroactivity of her decision and the fact that the children's activities were planned in expectation of a greater amount.
There is no support in the Guidelines for plaintiff's argument that the 14.6 percent adjustment should be based on the date of the final judgment. We consider it arbitrary to select the date of the judgment over the date of the pendente lite order when defendant had, in fact, been paying child support, albeit unallocated, from August 1, 1994, a month before the oldest child's sixth birthday. "The purpose ... of Child Support Guidelines is to set uniform orders premised on relevant economic precepts not subject to the wide variations, the uncertainty of result, that were inherent by-products of past decision-making." Martinez v. Martinez, 282 N.J.Super. 332, 343, 660 A.2d 13 (Ch.Div.1995). In our view, the uniformity sought to be achieved by the Guidelines is best served by looking to the earliest date from which support was paid, irrespective of whether the support was unallocated. Consequently, we reverse the motion judge's decision to include the 14.6 percent upward adjustment in calculating support in all three orders under appeal and remand for recalculation of support for 2000, 2001, and 2002.

II
Defendant next argues that the motion judge should have required plaintiff to provide proof of the extraordinary expenses *52 she was claiming for 2000 and 2001. Although plaintiff claimed that she provided the proofs, it appears that all she submitted for 2001 was a list of activities and amounts that added up to $7,776.65. Where there are factual disputes such as these, the moving party bears the burden of proof to demonstrate that the expenses she is claiming are both legitimate and reasonable. See Curley v. Curley, 37 N.J.Super. 351, 355, 117 A.2d 407 (App. Div.1955). A mere listing of the purported expenses, without more, is insufficient. Ibid. An evidentiary hearing is necessary under such circumstances before a motion judge can make a fair and reasonable determination on the disputed issues. See, e.g., Lepis v. Lepis, 83 N.J. 139, 159, 416 A.2d 45 (1980); Isaacson v. Isaacson, 348 N.J.Super. 560, 579, 792 A.2d 525 (App.Div.), certif. denied, by 174 N.J. 364, 807 A.2d 195 (2002); Schwarz v. Schwarz, 328 N.J.Super. 275, 284, 745 A.2d 592 (App.Div.2000). The parties have disputed extraordinary expenses since the October 29, 2002 order, and that issue has never been properly resolved.
Defendant next argues that the motion judge should not have characterized certain expenses as "extraordinary" because they are for ordinary extracurricular activities which should be paid from basic child support. Defendant contends that expenses such as gymnastics, tennis lessons, horseback riding lessons, drum lessons and cheerleading are activities contemplated by the Guidelines, Appendix IX-A, and should be included in basic child support. Defendant further argues that even if these expenses are considered extraordinary, the motion judge erred when she failed to include the amount of those expenses on line eleven of the child support worksheet and apportion them between the parties. Rather, the motion judge ordered defendant to pay 100 percent of those expenses.
Plaintiff responds that the expenses are not only extraordinary, but that children of parents with higher incomes are entitled to the benefit of such advantages. We agree that in high income families, "the children are entitled to the benefit of financial advantages available to them." Isaacson, supra, 348 N.J.Super. at 579, 792 A.2d 525. Nevertheless, the custodial parent bears the burden of establishing the reasonableness of those expenses. Ibid.
The October 29, 2002 order fixes $745 per month for extraordinary expenses, but the motion judge did not break down the allocation of the funds, nor did she include extraordinary expenses in the worksheet. In the March 18, 2003 order, the judge stated that defendant "agrees to include the total summer 2002 camp expenses for Nicole as extraordinary expenses in the 2002 calculation, as long as [plaintiff] provides proof of payment." The March 18 order further states that "[e]xtraordinary expenses of $4,850 per year will be added to [defendant's] share of child support after child support calculation." In the transcript of the March 18, 2003, oral argument, the judge explained that she was including gymnastics, art and horseback riding lessons as extraordinary expenses. That characterization, however, is not consistent with the Guidelines. The April 1, 2003, order fixed extraordinary expenses at $93 per week, but does not set forth what type of expenses that amount covers, nor does the transcript illuminate the issue. The attachment of the child support worksheet to the orders does not "abrogate the judge's obligation to make sufficient findings of fact." Schwarz, supra, 328 N.J.Super. at 284, 745 A.2d 592.
Appendix IX-A, paragraph 8, discusses the expenses included in child support awards:

*53 The Appendix IX-F support awards include the child's share of expenses for housing, food, clothing, transportation, entertainment, unreimbursed health care up to and including $250 per child per year, and miscellaneous items. Specific items included in each category are listed below.
....
EntertainmentFees, memberships and admissions to sports, recreational, or social events, lessons or instructions, movie rentals, televisions, radios, sound equipment, pets, hobbies, toys, playground equipment, photographic equipment, film processing, video games, and recreational, exercise or sports equipment.
[Pressler, Current N.J. Court Rules, Appendix IX-A, paragraph 8 (2000).]
Most of the expenses described by plaintiff as extraordinary appear to fall within the description of entertainment expenses in paragraph 8. On the other hand, Appendix IX-A, paragraph 9, states that "[b]ecause some child-related expenses represent large or variable expenditures ... it is not appropriate to include them in the Appendix IX-F basic child support awards.... If incurred in a particular case, these expenses should be added to the basic support obligation" as extraordinary expenses. Subparagraph (d) indicates that extraordinary expenses are "private elementary or secondary education, special needs of gifted or disabled children and NCP/PAR time transportation expenses." Obviously, the expenses described here do not fit the category of extraordinary expenses contemplated in the Guidelines but may, in the discretion of the trial court with proper consideration of the statutory factors in N.J.S.A. 2A:34-23, be added to the support obligation of a high income earner. Isaacson, supra, 348 N.J.Super. at 580-81, 792 A.2d 525. Nevertheless, Appendix IX-B, line 11, instructions indicate that "[e]xtraordinary expenses for a child that are not predictable and recurring should be shared between the parents in proportion to their relative incomes as incurred." (Emphasis added).
While it appears to us that the expenses characterized by the motion judge as extraordinary are not, in fact, extraordinary expenses under the Guidelines, we are unable to determine from the record before us whether they fall within the Appendix 1X-B, line 11 expenses that should be shared between the parents in proportion to their incomes. All of these issues relating to extraordinary expenses have been disputed in each of the orders under appeal. We, therefore, reverse the extraordinary expense portions of each order under appeal and remand for a plenary hearing to determine (1) the items characterized as extraordinary expenses; (2) the items characterized as ordinary extracurricular expenses; (3) whether the extracurricular expenses should be added to or included in defendant's support obligation under the statutory factors; (4) the allocation of extraordinary and extracurricular expenses between the parties; and (5) calculation of extraordinary expenses consistent with these directives for 2000, 2001 and 2002.

III
Defendant challenges the award of counsel fees in each of the three orders under appeal. He argues that the motion judge erred in considering only the tax returns to determine plaintiff's ability to pay and defendant's obligation to do so. Defendant correctly notes that other factors, such as the parties' assets, should be taken into consideration, as well.
R. 5:3-5(c) sets forth the factors to be considered in making a fee award in a matrimonial action:

*54 In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R. 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions, advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the result obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
We have combed the six transcripts of oral arguments before the motion judge resulting in the three orders under appeal and find no analysis of the factors set forth in R. 5:3-5(c). Rather, it appears that counsel fee awards were based solely on the disparity between the parties' incomes. Moreover, there is nothing in the record before us to indicate that plaintiff's counsel submitted affidavits of service to support the award of counsel fees as required in R. 4:42-9. Consequently, we reverse the award of counsel fees in each of the orders under appeal and remand to the trial court for a determination consistent with R. 5:3-5(c).

IV
Finally, we address the annual review of the parties' incomes to determine whether child support should be adjusted retroactively. The parties, counsel, and the motion judge appear to have interpreted the hearing judge's notation that "the parties agreed to exchange tax returns on an annual basis" as an order to engage in continual motion practice to adjust child support. This practice has resulted in child support always being calculated retroactively and perennial uncertainty as to what retroactive adjustments will be made and what the next year will hold. While this issue is not before us on appeal, our review of the record leaves no doubt that if the parties continue this practice, they will be engaged in perpetual litigation that is both costly and emotionally draining. The resulting tension between the parents can only result in harm to the children.
As we read the hearing judge's decision, it appears that she anticipated the parties agreeing to child support adjustments rather than engaging in on-going motion practice. At this juncture, a forensic accountant will be required to track the retroactive adjustments after the motions, cross-motions, motions for reconsideration, appeals and remands. We cannot imagine how the parties are able to plan financially when they are always working at least one year in arrears.
As we mentioned above, this issue is not before us on appeal. Nevertheless, we are exercising our original jurisdiction, pursuant to R. 2:10-5, to order the trial court to examine the fluctuating nature of defendant's income and devise a more appropriate means of adjusting support. Thousands of unsalaried professionals and non-professionals have fluctuating annual incomes and manage to make support adjustments without resorting to perpetual litigation. We have seen cases in which fluctuating income has been addressed by income averaging over a multi-year period, submission to an arbitrator, and even agreement by the parties. The financial drain of this continual litigation takes resources away from the families. Monies spent on counsel fees certainly would be better spent on the children of both parties, and it is incumbent upon the parties to assist the trial court in devising a more *55 congenial method of dealing with the fluctuating income such that they need not be engaged in perpetual litigation.

CONCLUSION
We have previously expressed our dismay that a motion made in November 2000 to reduce child support was still being litigated in the trial court in April 2003, and that six extensive oral arguments were conducted, resulting in three orders, but no plenary hearing was ever held to resolve the disputed issues. We are mindful of the heavy burden on family court judges, but we are unable to understand how one judge presiding over a case could require six oral arguments and still allow disputed issues to be unresolved for so long. In remanding this matter, we direct the trial court to undertake a plenary hearing to resolve the disputed issues, in addition to any new issues that will inevitably have arisen during the pendency of this appeal. The plenary hearing shall be conducted within thirty days of this decision. We do not retain jurisdiction.
Reversed and remanded for a plenary hearing consistent with this opinion.
NOTES
[1] While the parties have not provided us with a transcript or statement of reasons for the final judgment, the $6,000 child support award was apparently higher than the Child Support Guidelines but was based on a pendente lite order entered on September 2, 1994, directing defendant to pay $10,000 per month in unallocated support, retroactively from August 1, 1994.
[2] The hearing judge added ten percent to defendant's income and calculated child support on $185,000. We note that the hearing judge has since retired.
[3] Defendant is an attorney.
[4] We note that the judge who entered the order on May 24, 2001, passed away on June 7, 2002, but the case had been already transferred to the instant motion judge by October 2001.
[5] The motion judge calculated the children's extraordinary expenses at $9,000 per year for 2000 and 2001. She did not provide any explanation for the calculation, however. She also directed counsel to calculate credits and arrearages for the two years, and "to run Child Support Guidelines using variable alternatives for the parties' claims to tax exemptions for the children. The distribution that results in the lowest amount of taxes being paid will be adopted by the court with an offset if one party benefits substantially more than the other."
[6] Nor can we determine her reasoning from the lengthy record of oral argument.
[7] Thus, in July 2002, the parties were still litigating the motion made in November 2000, respecting defendant's 2000 support obligation.
[8] We are unable to determine from the July 5, 2002 transcript what rulings were made or not made, and the record is devoid of a statement of reasons. Since no order was entered, we are unable to determine what was accomplished in that oral argument.
[9] Neither party has indicated that any motion papers were filed between May 24 and October 29.
[10] The order entered on October 29, 2002, is dated August 14, 2002, and refers to the July 5, 2002, oral argument rather than the October 29 oral argument. It appears, however, that the order addresses the issues raised in defendant's March 2002 motion and the arguments on July 5 and October 29.
[11] R. 2:9-1 provides that "supervision and control of the proceedings on appeal ... shall be in the appellate court from the time the appeal is taken." The trial court retains jurisdiction only "to enforce judgments and orders pursuant to R. 1:10."
[12] The transcript from March 18 ends on page 135 in mid-sentence with no conclusion. In the beginning of the April 1 transcript, the judge indicated that the tape ran out on March 18 after "another one of our marathon sessions."
[13] Since this appeal addresses child support from 2000, we have referred to the Appendix in effect at that time. There have been no amendments to the Appendix since that time, however, and the same language remains in effect today.
[14] The final judgment awarded plaintiff $2,500 in alimony and $6,000 in child support per month.